Mixon v. Barton Lumber & Brick Company.

5-1032                              295 S. W. 2d 325

Opinion delivered October 22, 1956.

[Rehearing denied December 3, 1956.]

*Max B. Reid* and *Davis & Davis,* for appellant.

*Barrett, Wheatley, Smith & Deacon* and *William B. Howard,* for appellee.

MINOR W. MILLWEE, Associate Justice. The question presented is whether a judgment rendered in a prior action in federal court was *res judicata* in appellant's instant suit in the Craighead Chancery Court for dissolution of a corporation and distribution of its assets.

The Barton Lumber & Brick Company of Jonesboro, Arkansas, was organized for the purpose of conducting a lumber and brick business. P. C. Barton was organizer and principal stockholder of the corporation which eventually acquired valuable farm lands and other proper-

ties now valued at approximately $500,000. Prior to his death in 1940 P. C. Barton had acquired and transferred all the stock in the corporation to his six daughters and two sons who became the principal stockholders. Three of the stockholders, Mrs. Alma B. Mixon, who is the appellant here, Mrs. Arabella B. Robinson and Mrs. Annie B. Henderson became dissatisfied with the manner in which the affairs of the corporation were conducted. In June, 1952 they employed by letter contract the law firm of Davis & Davis of Memphis, Tennessee, for the purpose of taking steps to effect a dissolution of the corporation and distribution of its properties to the stockholders. Subsequently Mrs. Mixon and Mrs. Robinson, who lived at Jonesboro, employed the law firm of Reid & Roy of Blytheville, Arkansas, to join the Davis firm in representing their interests in the undertaking.

On December 21, 1952, the two firms employed by the three stockholders filed an action in the U. S. District Court, Jonesboro Division, by Mrs. Annie B. Henderson, who resided in Louisiana, against the Barton Lumber and Brick Company and W. F. Barton, a principal stockholder, to dissolve the corporation and distribute its assets among the stockholders. After setting out the respective interests of the several stockholders, the complaint alleged that the corporation had been engaged for many years in certain *ultra vires* activities which were detrimental to plaintiff and other stockholders; that a minority of the stockholders felt they were being deprived of their legal rights; that there was great dissension between the majority and minority stockholders and the latter were of the opinion that such dissension would continue in the future. It was further alleged that the corporation should be dissolved, its debts and costs of dissolution paid and the remaining assets distributed among the stockholders in proportion to their respective interests; and that W. F. Barton should be required to account for monies received for the use of lands leased by him for several years from the corporation. There was a prayer for an accounting for the use and benefit of the corporation and that the corporation be dissolved and its

assets distributed among the stockholders as their interests might appear.

After continuous negotiations over a period of several months between counsel representing the respective parties and their clients, a compromise settlement was worked out and agreed to by all the parties in the latter part of 1953 based upon a partial liquidation of the corporation and distribution of certain of its assets to Mrs. Henderson, Mrs. Robinson and Mrs. Mixon. Mrs. Henderson furnished counsel her proxy to represent her at a stockholders meeting to effect the partial liquidation. At this meeting it was found to be necessary to also hold a meeting of the board of directors of the corporation to consummate the settlement, but Mrs. Henderson, who was a board member, refused to waive notice of a called meeting or to further participate in the consummation of the settlement. She also refused to further prosecute the suit filed by her in the U. S. district court. At a pretrial conference in that case on January 26, 1954, the court announced his intention to try the case during the week beginning February 8, 1954 unless it was dismissed in the meantime. Counsel then filed a motion on behalf of Mrs. Henderson to permit her to take a voluntary nonsuit without prejudice. The court, acting in the exercise of its discretion in such matters, refused to entertain such motion unless Mrs. Henderson paid fees in the sum of $1,250 to defendants' attorneys. Mrs. Henderson refused to make such payment whereupon counsel, acting on her behalf, moved that the action be dismissed with prejudice and this was done.

On July 31, 1954, Mrs. Alma B. Mixon, the present appellant, filed the instant suit in the Craighead Chancery Court against the Barton Lumber & Brick Company and the other seven stockholders of the corporation. The complaint, with minor exceptions, embraced essentially the same allegations and prayer for relief as that filed by Mrs. Henderson in the U. S. district court. All the defendants except Mrs. Robinson and Mrs. Henderson joined in a separate answer on September 9, 1954, making certain admissions and denials and pleading estoppel, limitations, laches and *res judicata* on account of

the prior action by Mrs. Henderson in federal court. On January 31, 1955, said defendants, who are the appellees here, filed a motion to dismiss the complaint, alleging: "At the time of the filing of the Henderson suit in Federal Court this plaintiff, Alma B. Mixon, was represented by the same counsel under joint contract of employment with Mrs. Henderson and that the Henderson suit was brought as a class action for the benefit not only of Mrs. Henderson but of this plaintiff, Alma B. Mixon, by reason of the disposition of the Henderson suit in Federal Court the issues raised by plaintiff's pleading in this court are res adjudicata.

"These defendants move for dismissal of the complaint herein for the further reason that this plaintiff Alma B. Mixon is estopped to maintain this action by virtue of her participation and by the action of her counsel in the class action brought by Annie B. Henderson in the United States District Court as above set out."

The chancellor took the motion under advisement after a hearing and on February 11, 1956, entered a decree dismissing the complaint and finding that the decision in the Henderson suit in federal court was res judicata as to appellant who was estopped to maintain the instant suit.

The issue is the correctness of the able chancellor's determination that the judgment of the U. S. district court in the suit by Mrs. Henderson was res judicata as to appellant's right to maintain the present suit. In several cases we have approved the following definition from 30 Am. Jur., Judgments, Sec. 161: "Briefly stated, the doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." In reference to the doctrine in Sec. 162 of the same work, the author says: "It is not, however, to be applied so rigidly as to defeat the ends of justice; there are exceptions to it based upon important reasons of policy."

Since appellant was neither a party to the former suit nor technically in privity with her sister in that action, she would not be barred from maintaining the instant suit unless her actions and conduct, and that of her attorneys, have placed her within a recognized. exception to, or expansion of, the foregoing general rule.

In support of the chancellor's action appellees earnestly contend the facts here are such as to bar the appellant under the rules applicable either to persons participating in litigation or persons virtually represented as a class by a party or parties of record. Appellees particularly rely on *Carrigan* v. *Carrigan*, 218 Ark. 398, 236 S. W. 2d 579, where we approved the following statement from 30 Am. Jur., Judgments, Sec. 227: "The strict rule that a judgment is operative, under the doctrine of *res judicata*, only in regard to parties and privies is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by the employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, or doing of such other acts as are generally done by parties." In the 1956 Cumulative Supp. to the foregoing section, p. 116, there is the following addendum: "An essential condition recognized expressly by most of the cases for the application of the rule is that the prosecution of the action or the defense by the nonparty, or his assistance or co-operation with the party, must have been for the promotion or protection of some interest of his own which would otherwise be prejudicially affected. And another condition frequently, but not always, attached to the application of the rule is that such person had the control or a right of control over the litigation, with the privilege of exercising all the rights of a party of record, such as the right to introduce evidence, examine and cross-examine witnesses, and appeal from the decision of the court, etc. . . ." Numerous cases are collected in an exhaustive annotation on the question in 139 A. L. R. 10.

The doctrine of virtual or class representation is set forth in 30 Am. Jur., Judgments, Sec. 228, as follows: "There are cases in which such a number of persons in interest may be made plaintiffs or defendants as will fairly represent the interests of all standing in like character and responsibility. While the general rule is that no person is bound by a judgment except those who are parties or stand in privity with others who are parties, there is an exception to the rule, of equal authority with the rule itself, in the case of persons who are virtually represented by persons on the record as parties. In such case, a judgment in favor of the parties representing the general class is operative under the doctrine of *res judicata* in favor of all who are thus represented, and a judgment against the parties representing the general class is operative against those represented. This doctrine does not depend upon statutory provisions; it is a rule of common law, founded on convenience and necessity. It is based upon the theory that the persons joined and not joined have a common interest, that the parties joined may be depended upon to bring forward the entire merits of the controversy as a protection to their own interests, and that the persons not joined as parties are sufficiently represented by those who are joined. It should be noted that where the reason for the rule does not exist, the rule itself will not be enforced, and if, under the actual facts of a case, the interests of those not joined are antagonistic to those of the parties who would represent them, the former will not be concluded by a judgment against the latter. The same rule has also been applied where the interests of persons not joined were not considered or protected by the court in rendering judgment."

The general rule applicable to suits by stockholders is stated in 50 C. J. S., Judgments, Sec. 794, as follows:

"A judgment in a representative stockholder's suit brought on behalf of the corporation or of all other stockholders similarly situated is a binding adjudication of the corporation's rights, and concludes other stockholders who had an opportunity to, but did not, join or intervene, unless it is shown that the judgment was ob-

tained through fraud or collusion. However, a judgment or decree in a minority stockholder's suit, not shown to be a representative or class suit on behalf of all other stockholders similarly situated, is not *res judicata* of the right of other stockholders to sue for similar relief, especially where different questions are raised by the two suits; and a recovery by a stockholder for an individual loss does not estop him subsequently to sue in a representative capacity . . . ." As the annotator points out in 129 A. L. R. 1042: "Although there are a large number of cases in which it has been held that a particular judgment or decree rendered in an action by or against a corporation was *res judicata* in a subsequent action by or against a stockholder or stockholders of the corporation, the broad conclusion that under all circumstances a corporation so represents its stockholders in litigation in which it is involved that they are privy thereto and the judgment or decree rendered therein is *res judicata* in subsequent litigation involving them, is not justified."

In *Crow Creek Gravel & Sand Co.* v. *Dooley,* 182 Ark. 1009, 33 S. W. 2d 369, this court recognized the rule to the effect that the doctrine of virtual representation, by which parties may be bound by a judgment although not parties to the suit, is based on the theory that they are sufficiently represented by those who are parties on the record, and that the latter will fairly represent the interests of all standing in like character and responsibility. Also in *Lightle* v. *Kirby,* 194 Ark. 535, 108 S. W. 2d 896, we followed the equally well settled rule that a judgment or decree in a purported class suit is not *res judicata* or a bar as against persons who are not actual parties thereto, where the parties named to represent them asserted rights or had interests in the subject matter that were adverse or hostile to them. See also *Connor* v. *Thornton,* 207 Ark. 1113, 184 S. W. 2d 589, and cases from other jurisdictions to the same effect cited in 132 A. L. R. 753.

The parties to the suit by Mrs. Henderson in federal court were neither numerous nor unknown. The diversity of citizenship arising by virtue of her Louisiana res-

idence was the only basis for federal jurisdiction, all other parties and this appellant being residents of Arkansas. While appellant was not a party and filed no pleadings in that action, it was filed for her benefit and she and her attorneys admittedly participated in negotiations calculated to effect a disposition of the case favorable to the rights and interests of the minority stockholders.

An application of the foregoing legal and equitable principles leaves no doubt but that the termination of the former action would have barred appellant's maintenance of the instant suit if the dismissal had taken place after a trial on the merits. It is also true that as to Mrs. Henderson the dismissal with prejudice amounted to an adjudication on the merits sufficient to support the plea of *res judicata*. This would also be true as to appellant if Mrs. Henderson had not suddenly changed her mind and assumed a position antagonistic and hostile to appellant and the other minority stockholder. In other words, the Henderson suit was instituted and conducted as a class action down to the point where the plaintiff suddenly and without explanation rejected the compromise settlement previously agreed to, abandoned her suit and, in effect, joined her adversaries. In doing so she asserted interests in the subject matter adverse and antagonistic to the class she purported to represent. In these circumstances it would be manifestly inequitable and unjust to say that appellant has had her day in court.

But appellees say it was incumbent on appellant to intervene in the Henderson suit if she wished to save her rights. Ordinarily the right to intervene in an action does not, in the absence of its exercise, subject one possessing it to the risk of being bound by the result of the litigation, under the doctrine of *res judicata*. 30 Am. Jur., Judgments, Sec. 220. Nor is it by any means certain that the federal court would have permitted either an intervention or the substitution of the appellant as party plaintiff where the only ground for federal jurisdiction was eliminated by a dismissal that appellant was powerless to prevent. In none of the cases cited by appellees in support of this argument do we find a sudden

change of position by the party who purported to represent the particular class.

The decree is accordingly reversed and the cause remanded with directions to overrule the motion to dismiss the complaint.