The ARKANSAS DEPARTMENT OF HUMAN SERVICES *v*. Quinton Wayne DEARMAN

CA 91-442                                        842 S.W.2d 449

Court of Appeals
En Banc
Opinion delivered November 25, 1992

64

*Bruce P. Hurlbut*, for appellant.

*Robert J. Gladwin*, for appellee.

MELVIN MAYFIELD. Judge. The Arkansas Department of Human Services (DHS) appeals from the order of the trial court which granted appellee Quinton Wayne Dearman's motion to dismiss its "Petition for Emergency Custody" on the basis of collateral estoppel.

Quinton Dearman and his wife (now Oleta Colleen Brooks) were divorced by a decree entered April 22, 1987. Custody of the parties' two girls, J.D., born November 5, 1980, and K.D., born August 30, 1984, was awarded to the father. On June 1, 1990, the

mother picked up the girls in accordance with a court order that increased her visitation rights to allow her a six weeks summer visitation, left the state with the children, and did not return until February 22, 1991, some seven months after her visitation period had ended. Upon returning to Arkansas, the mother took J.D. to the Washington County Office of DHS where the child was interviewed by Darby Snell, a DHS investigator, with regard to allegations of sexual abuse reportedly committed by the father. After interviewing J.D., Darby Snell told the mother not to return the children to their father.

On February 25, 1991, the father filed a motion for contempt of court against the mother for failing to return the children as ordered. The mother filed a counterclaim in which she alleged that the father had sexually abused J.D. and asked for change in custody or, in the alternative, for temporary custody pending the completion of an investigation of the matter.

At a hearing held March 21, 1991, on the father's petition for contempt and the mother's counterclaim, the court heard extensive testimony from the father, the mother, J.D., Darby Snell, and a deputy prosecuting attorney concerning the alleged sexual abuse issue. In an order entered April 2, 1991, the chancellor found the mother to be in contempt of court, ordered the children to be returned to their father, and dismissed the mother's counterclaim on the finding that it was not supported by the evidence.

On April 21, 1991, DHS filed a "Petition for Emergency Custody" in the Juvenile Division of Washington County Chancery Court alleging the children were dependent/neglected. The affidavit of Darby Snell, which was attached to the petition, stated that J.D. was "scared at home" because her father had been dressing K.D. each morning and J.D. "is very uncomfortable that her father may do to her sister as he has done to her." The affidavit alleges that J.D. said her father had intercourse with her "about one year ago." On April 22, 1991, the juvenile court entered an ex parte order for emergency custody on the finding that there was probable cause to believe J.D. and K.D. were dependent/neglected children and ordered them placed in the custody of DHS pending further orders of the court.

On April 24, 1991, the father filed a motion to dismiss the

DHS petition, and after a hearing at which Darby Snell testified and a transcript of the evidence taken in the chancery case was introduced, along with the pleadings and orders of that case, the court dismissed the petition upon a finding that the issue of sexual abuse by the father had been fully litigated in the contempt hearing held March 21, 1991, had been determined in favor of the father, and that the DHS petition was barred by the doctrine of collateral estoppel.

In its first two arguments on appeal DHS argues the trial court erred in applying the doctrine of collateral estoppel because the issue litigated in chancery court was not the same issue as that sought to be litigated in juvenile court and because DHS was neither a litigant in chancery court nor in privity with the children's mother. The Ozark Legal Services was appointed guardian ad litem for the minor children and has filed a brief which, essentially, makes the same argument made by DHS.

■ The doctrine of collateral estoppel or issue preclusion bars the relitigation of issues of law or fact actually litigated by parties in the first suit. *Toran* v. *Provident Life & Accident Ins. Co.*, 297 Ark. 415, 764 S.W.2d 40 (1989). It is based upon the policy of limiting litigation to one fair trial on an issue, *Scogin* v. *Tex-Ark. Joist Co.*, 281 Ark. 175, 662 S.W.2d 819 (1984), and is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Bailey* v. *Harris Brake Fire Protection Dist.*, 287 Ark. 268, 697 S.W.2d 916 (1985).

■ In Newbern, *Arkansas Civil Practice and Procedure*, Section 26-12 at 262-63 (1985), the author, in discussing res judicata and collateral estoppel, quotes from *Lovell* v. *Mixon*, 719 F.2d 1373 (8th Cir. 1983) as follows:

> Under the doctrine of collateral estoppel, four criteria must be met before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. . . . Thus, the application of collateral estoppel or issue preclusion is limited to those

matters previously at issue which were directly and necessarily adjudicated. . . . However, both doctrines are applied only when the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question. [Citations omitted.]

■ In the instant case, the issue of appellee's sexual abuse was raised by the mother in her counterclaim in chancery court. The court heard extensive testimony on the issue from the father and mother, from the child, J.D., and from the DHS investigator, Darby Snell. Based upon the evidence, the chancery judge found the allegations of the counterclaim were not supported by the evidence and the counterclaim was dismissed.

Nineteen days later, DHS filed its Petition for Emergency Custody based upon allegations of sexual abuse committed by the appellee. At the hearing on appellee's motion to dismiss, Darby Snell, the DHS investigator whose affidavit accompanied the petition, testified that the allegations of sexual abuse litigated in chancery court were the same ones she was talking about in her affidavit; that there were no new allegations of sexual abuse committed by the father since the time of the chancery court hearing; and that the question of what happened to J.D. had been litigated in chancery court.

Therefore, we find the issue in both cases to be identical, i.e., whether or not the father sexually abused his daughter, J.D.; that this issue has been tried before and determined by a valid judgment; and that the determination of this issue was necessary to the judgment on the mother's counterclaim.

■ The question of who may be bound by a judgment is considered in Freidenthal, Kane, and Miller, *Civil Procedure* § 14.9 (1985). In discussing the general issue underlying collateral estoppel, the authors state:

When an issue has been litigated fully between the parties, spending additional time and money repeating this process would be extremely wasteful. This is particularly important in an era when the courts are overcrowded and the judicial system no longer can afford the luxury — if it ever could — of allowing people to relitigate matters already decided.

*Id.* at 658. The authors also state that this doctrine applies only to persons who were parties or who are in privity with persons who were parties in the first action and that persons in a privity relationship are deemed to have interests so closely intertwined that a decision involving one necessarily should control the other. *Id*, § 14.13 at 682-83.

■ It has been suggested that privity is merely a word used to say that the relationship between one who is a party and another person is close enough that a judgement that binds the one who is a party should also bind the other person. *Bruszewski* v. *United States,* 181 F.2d 419 (3d Cir. 1950) (Goodrich, J., concurring). This is the view taken in 18 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4448 (1981) where it is stated:

> As to privity, current decisions look directly to the reasons for holding a person bound by a judgment. This method should be adopted generally so that a privity label is either discarded entirely or retained as no more than a convenient means of expressing conclusions that are supported by independent analysis.

The Arkansas Supreme Court has said that privity within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right. *Spears* v. *State Farm Fire & Casualty Ins.,* 291 Ark. 465, 468, 725 S.W.2d 835 (1987). In *Restatement (Second) of Judgments* § 39 (1982) it is stated that "a person who is not a party to an action but who controls or substantially participates in the control of the present action on behalf of a party is bound by the determination of issues decided as though he were a party." It has also been held that the identity of parties or their privies for res judicata purposes is a factual determination of substance, not mere form. *People* v. *Tynan,* 701 P.2d 80, 83 (Colo. Ct. App. 1984). *Accord Watts* v. *Swiss Bank Corporation,* 27 N.Y.2d 270, 265 N.E.2d 739 (1970).

■ In *Moore* v. *Hafeeza,* 515 A.2d 271 (N.J. Super. Ct. Ch. Div. 1986), the mother of a child born out of wedlock was held to be in privity for purposes of res judicata and collateral estoppel with the county board of social services which had brought an earlier paternity and support action. The court said:

The underlying purpose of the modern rule is fundamental fairness and common sense. Courts everywhere are being deluged with law suits and the necessity to reduce the volume of litigation must be considered so long as we do not adopt a constitutionally flawed rule which subverts fairness in a due process sense. Thus, it appears to be the modern rule that privity should be applied when:

1. The claim of the nonparty is based on the same transaction or occurrence,

2. The interests of both claimants are similar and no adverse interests exist,

3. The nonparty had notice of the earlier action, and

4. The nonparty did or had an opportunity to participate or intervene in the earlier case.

515 A.2d at 274.

And in *Department of Human Services* v. *Seamster*, 36 Ark. App. 202, 820 S.W.2d 298 (1991), it was held that where the child's mother had brought a paternity action against the appellee in compliance with the statutes then in effect, and it was clear that she brought that action to obtain support for the child, the trial court properly found the action brought by DHS, which was also brought to obtain support for the child, was barred by res judicata.

In the present case both the mother's counterclaim and DHS's Petition for Emergency Custody are based on allegations of sexual abuse. There is an identity of interest between the mother and DHS in that both seek to prove allegations of sexual abuse against the father of the children, to remove them from his custody, and to protect the best interests of the children. DHS had notice of the earlier action and the opportunity to participate. Indeed, the mother testified that Darby Snell and her supervisor, Janet Richardson, told her that for the best interest of the children they should not be returned to their father. Ms. Snell testified in both chancery court and juvenile court as to the allegations of sexual abuse. And, at the hearing on the father's motion to dismiss, Ms. Snell testified that without these allegations DHS would not have brought the Petition for Emergency

Custody and would not have been interested in bringing a dependency/neglect case against the mother. Moreover, it was only after the chancery court failed to remove the children from appellee's custody that DHS decided to file its petition for custody.

Therefore, we find the relationship between the mother and DHS sufficient to bar DHS, under the principle of collateral estoppel, from maintaining this action. Collateral estoppel or *issue* preclusion is not the same concept as res judicata or *claim* preclusion. *Toran* v. *Provident Life & Accident Ins. Co., supra.* The record clearly supports the trial judge's finding that the issue in this case is the same issue litigated on the mother's counter-claim in the case in chancery court. The record also clearly shows that in both cases, under the modern view of privity, the relationship between the mother and DHS in the attempt to remove the custody of the two girls from their father was so closely intertwined that the mother and DHS were in privity and are each bound by the chancery court judgment.

Appellant also argues juvenile court is *required* by Ark. Code Ann. § 9-27-315(a) (1987) to hold a probable cause hearing. That statute provides:

> Following the issuance of an emergency order removing the custody of a juvenile from a parent, guardian, or custodian, the court shall within five (5) business days of the issuance of the ex parte order, hold a hearing to determine if probable cause to issue the emergency order continues to exist.

Assuming without deciding that the court was required to hold a probable cause hearing, we think that requirement was satisfied by the hearing held on appellee's motion to dismiss.

Affirmed.

JENNINGS and DANIELSON, JJ., dissent.

JOHN E. JENNINGS, Judge, dissenting. The majority holds that the Department of Human Services is barred by collateral estoppel from bringing an action in juvenile court in an attempt to establish that the parties' children are "dependent-neglected." I cannot agree that on these facts the doctrine of collateral estoppel

is applicable.

Collateral estoppel is, as the court says, issue preclusion. One requirement for the doctrine's application is an identity of issues. David Newbern, *Arkansas Civil Practice & Procedure* § 26-12 (1985); Jack H. Friedenthal, et al., *Civil Procedure* § 14.10 (1985). It is said that the requirement that the issues be identical is strictly construed. Friedenthal, *supra.* In the prior proceeding in chancery court the ultimate questions the court had to decide were whether the mother was in contempt of the court's prior orders and whether primary custody of the child should be changed from the father to the mother. In the proceeding brought by DHS in juvenile court, the judge would ultimately have had to decide whether the children were dependant-neglected and where their physical custody should be placed, at least on a temporary basis. I agree with the majority that the underlying issue in both cases is whether the father has abused the children, or either of them. Perhaps this is enough to satisfy the requirement that the issues be identical.

I cannot agree, however, that DHS was in privity with the mother in a way which would operate to bar DHS, under the doctrine of collateral estoppel, from bringing a dependency-neglect proceeding. I agree with the majority's general approach that it is preferable to examine and state the reasons why a non-party should or should not be barred by collateral estoppel, rather than simply concluding that there is or is not "privity." *See* 18 Charles A. Wright, et al., *Federal Practice & Procedure* § 4448 (1981). *See also, generally* Friedenthal, *supra* at 683; 46 Am. Jur. 2d *Judgments* § 532 (1969); Note, *Collateral Estoppel of Nonparties*, 87 Harv. L. Rev. 1484 (1974).

The majority finds privity here based on § 39 of the *Restatement (Second) of Judgments* (1980): "A person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party." *See also, Montana* v. *United States*, 440 U.S. 147 (1979); Friedenthal, *supra* at 684. The same principle was approved in *Carrigan* v. *Carrigan*, 218 Ark. 398, 236 S.W.2d 579 (1951), where the supreme court said:

The strict rule that a judgment is operative, under the

doctrine of *res judicata*, only in regard to parties and privies is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by the employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, or doing of such other acts as are generally done by parties.

*Carrigan* at 403, (quoting 30 Am. Jur. *Judgments* § 227). In *Mixon* v. *Barton Lumber & Brick Co.*, 226 Ark. 809, 295 S.W.2d 325 (1956), Justice Millwee, in referring to the rule approved in *Carrigan*, added:

An essential condition recognized expressly by most of the cases for the application of the rule is that the prosecution of the action or the defense by the nonparty, or his assistance or co-operation with the party, must have been for the promotion or protection of some interest of his own which would otherwise be prejudicially affected. And another condition frequently, but not always, attached to the application of the rule is that such person had the control or a right of control over the litigation, with the privilege of exercising all the rights of a party of record, such as the right to introduce evidence, examine and cross-examine witnesses, and appeal from the decision of the court, etc. . . . .

*Mixon* at 814 (quoting 30 Am. Jur. *Judgments* § 227 (Supp. 1956)). *See also, Montana* v. *United States*, 440 U.S. 147 (1979) at pp. 154 and 155. In the case at bar there is no question but that DHS was not a party to the custody proceeding between the parents. DHS did, through its agent Ms. Snell, advise the mother to continue to violate the prior court order and not return the children to their father. Ms. Snell also testified favorably for the mother in the custody litigation, although she was subpoenaed by the father. It is also true, as the majority states, that both the mother and DHS sought to prove allegations of sexual abuse against the father. Finally, DHS had notice of the custody proceeding, in the sense that its agents were aware of it.

The question in my view is whether this all adds up to sufficient participation and control of the litigation to require the bar of collateral estoppel. I think not. The case at bar has none of the factors typically present when a finding of privity is based on participation and control of the litigation. In the custody suit DHS did not pay attorney's fees or costs, examine witnesses, argue to the court, or participate in the preparation of the pleadings. DHS did not appeal the chancellor's order — indeed it could not have as it was not a party to the action. Even though one who has a right to intervene is not by that fact alone bound by the doctrine of res judicata, *see UHS of Ark., Inc.* v. *City of Sherwood*, 296 Ark. 97, 752 S.W.2d 36 (1988), it is significant that the dependency-neglect proceeding could not have been joined with the custody proceeding in chancery for the reason that the juvenile court had exclusive jurisdiction. Ark. Code Ann. § 9-27-396(a)(1) (Repl. 1991). Arkansas Code Annotated section 16-13-605(c) (Supp. 1991) prohibits an assignment of such cases out of the juvenile division.

Privity is not established by the mere fact that persons may happen to be interested in the same question or in proving or disproving the same state of facts. 46 Am. Jur. 2d *Judgments* § 532 (1969). That one person helps another in litigation, by itself, does not justify imposing preclusion on one of them on the basis of a judgment affecting the other. *Restatement (Second) of Judgments) § 62 cmt. c (1980)*. Clearly one does not become bound by res judicata merely because of having been a witness in the prior lawsuit. *See Hogan* v. *Bright*, 214 Ark. 691, 218 S.W.2d 80 (1949). DHS's inability to appeal the custody decree provides a specific exception to the application of collateral estoppel. *Restatement (Second) of Judgments* § 28(1) (1980).

The paternity cases cited by the majority do not seem to me to be persuasive. In *Moore* v. *Hafeeza*, a decision of a New Jersey trial court, the mother brought a paternity action against Hafeeza some fourteen years after she had participated in the same cause of action brought by a New Jersey Board of Social Services against the same man. In *Department of Human Services* v. *Seamster* we had the converse situation: DHS brought a paternity action against Seamster some twelve years after the mother of the child had received an adverse determination of the same claim. In *Seamster* we did not discuss the question of

privity. Our decision was a limited one, based upon the particular language of the paternity statute in effect in 1979. *Seamster*, 36 Ark. App. at 205. The situations in both cases seem analogous to barring successive trustees from filing the same claim on behalf of the same beneficiary against the same defendant. *See generally* Friedenthal, *supra* at 684.

Finally, there are constitutional problems. "It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp.* v. *Hazeltine Research*, 395 U.S. 100 (1969). In *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation*, 402 U.S. 313 (1971), the Court said:

> . . . [T]he requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard.
>
> Some litigants - those who never appeared in a prior action - may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Blonder-Tongue*, 402 U.S. at 329.

While I do not approve of DHS's advice to the mother to continue to violate the chancellor's order, I cannot understand how this justifies imposing the bar of collateral estoppel. And while it seems perhaps unwise, given the principle of comity[1], for DHS to file a petition in juvenile court based on the same evidence that was so recently found insufficient in chancery court, I cannot agree DHS is legally barred from doing so.

DANIELSON, J., joins in this dissent.

---

[1] *See Triplett* v. *Lowell*, 297 U.S. 638 at 642 (1936), overruled in part, on other grounds, in *Blonder-Tongue, supra.*