AMERICAN INVESTORS LIFE INSURANCE COMPANY
*v.* Patricia Kathleen HUDSON

CA 95-970                                          935 S.W.2d 594

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1996
[Petition for rehearing denied January 29, 1997.*]

---

* Pittman, J., would grant.

*Skokos, Bequette & Smith, P.A.,* by: *Jay Bequette,* for appellant.

*Hardin, Dawson & Terry,* by: *Rex M. Terry,* for appellee.

MELVIN MAYFIELD, Judge. This is the third appeal of this case in this court. It involves the continuing attempt of the appellee, Patricia Kathleen Hudson as Executrix of the Estate of Pat K. Savelle, to collect medical and life insurance benefits under a group insurance plan covering Pat Savelle who died on April 28, 1986.

In 1985, Pat Savelle filed a complaint seeking a declaratory judgment holding that her medical coverage benefits under a group policy issued by the Arkansas Nursing Home Employee Benefit Trust was valid and should be continued until she was no longer totally disabled. Summary judgment was entered June 12, 1986, in her favor. However, this judgment was later vacated because Ms. Savelle died prior to its entry.

On September 17, 1987, the present appellee was substituted as party plaintiff. Appellee then filed an amended complaint realleging and adopting the allegations of the original complaint and seeking, in addition, death benefits as provided by the plan. On July 28, 1989, summary judgment was granted for appellee against "Maury Barnes, Kenneth K. Yarbrough, Ann Wiggins, Melvin Nussbaum, Perry Wilson, and any successors in interest thereto, as Trustees of the Arkansas Nursing Home Association Employee Benefit Trust." (American Investors Life Insurance Company was not then a party.) The trial court granted the appellee's complaint for declaratory judgment on the basis that Pat Savelle continued to be entitled to all health insurance coverage, including death benefit coverage, beyond the termination of her employment through the

date of her death, April 28, 1986. On August 24, 1989, "Maury Barnes, et al" filed a notice of appeal, and in an unpublished opinion handed down June 27, 1990, this court affirmed the judgment in every respect except for an award of statutory penalty.

Subsequently, the appellee filed a motion asking the trial court for a money judgment, consistent with her declaratory judgment, for unpaid medical bills and life insurance benefits, plus interest, costs, and attorney's fees. The defendants opposed the claim for some medical bills alleging entitlement to certain offsets. A hearing was held in July 1991, on the actual amount due appellee and in an order entered April 8, 1992, the trial court found the appellee was entitled to the amount of the claim presented and granted appellee judgment in a specific amount, including attorney's fees. The trial court's finding was based in part upon the testimony of Robert Alexander, an attorney for American Investors Life Insurance Company, who appeared on behalf of the defendants. The trial court entered judgment not only against the trust as an entity, but also against the individual trustees, for all amounts. And the court also found that American Investors was the successor in interest to the trust and was also responsible for the judgment, and the court specifically reserved jurisdiction for the sole purpose of joining American Investors as an additional party for further proceedings against it which might be necessary in the event appellee was unable to collect the judgment awarded.

Thereafter, on May 7, 1992, a notice of appeal was filed which stated that "Maury Barnes, Kenneth K. Yarbrough, Ann Wiggins, Melvin Nussbaum, Perry Wilson, and any Successors in Interest Thereto, as Trustees of the Arkansas Nursing Home Association Employee Benefit Trust, Defendants" appeal the order entered April 8, 1992. In an unpublished opinion handed down June 30, 1993, this court affirmed the judgments against the trust and the individual trustees, but modified the amount of judgment by reducing it by an amount that had been written off by Cooper Clinic, and by eliminating post-judgment interest prior to April 8, 1992.

On September 9, 1993, the judgment not having been satisfied, appellee filed an amended complaint in which she asked that the appellant American Investors be added as an additional party, and for judgment against that appellant also as a successor in interest. American Investors was made a party and answered denying most of the allegations of the complaint stating, "Since American

Investors was not previously a party to the litigation, American Investors is without sufficient information to admit or deny the material allegations," and on March 14, 1994, it filed a motion for summary judgment on the basis that the order of April 8, 1992, was ineffective against it because it was not served with legal process or notice, and it was not a successor in interest to the trust or responsible for the trust's liabilities.

After a hearing held March 25, 1994, the trial court entered a well-reasoned and comprehensive opinion holding that appellant was fully liable for all sums due the appellee. The trial court awarded judgment in favor of the appellee in the amount of $61,253.75, plus attorney's fees and accrued costs. Because of its completeness, we quote extensively from the trial court's decree and judgment. We also point out that the appeal from this judgment is only by American Investors Life Insurance Company (American Investors) and hereafter our reference to appellant without other designation will be to that appellant. The trial court's decree states in part, as follows:

### III.

Plaintiff obtained Judgment in this Court on August 2, 1989, as against all Defendants except American Investors Life Insurance Company, which was not then a party. The Judgment held in favor of the Plaintiff, granting her Complaint for declaratory judgment. The basis of the Court's holding was that Plaintiff's Decedent, Pat Savelle, continued to be entitled to all health insurance coverage, including death benefit coverage, beyond termination of her employment date through the date of her death, which was on April 28, 1986.

. . . .

### IX.

Defendant, American Investors insists that it is not responsible for any sums due and owing to the Plaintiff under the previously awarded judgments by the Court. On the Contrary, the Court concludes that Defendant American Investors is fully liable for all sums due and owing to the Plaintiff, previously affirmed by the Arkansas Court of Appeals. In so concluding, the Court has considered the testimony of the Plaintiff's representative, James Hudson, and the

Defendants' representative, Robert Alexander, who had also previously testified for and on behalf of the other Defendants who are trustees of the Arkansas Nursing Home Association Employee Benefit Trust. The Court is persuaded, consistent with Mr. Alexander's previous testimony in this matter, that American Investors assumed the claims that were outstanding as of January 1, 1989. Those claims necessarily included the claim of the Plaintiff's decedent, Pat Savelle, which claim has been held valid by this Court in a previous proceeding, and which was affirmed by the Arkansas Court of Appeals. Thus the Defendant American Investors' position that the claim is not valid because Ms. Savelle terminated her employment prior to the termination of the Trust, is wholly without merit, that issue having been conclusively determined by this Court, and the Arkansas Court of Appeals, in previous proceedings. Defendant, American Investors cannot collaterally attack those previous findings of the Court. That is particularly true here, since at all times, all Defendants have been represented by the same able attorneys, and have been represented at hearings by the same representative, namely, Robert Alexander.

## X.

The Court is persuaded that American Investors, or persons acting on its behalf, knew at all relevant phases of this litigation, as did Fewell & Associates, as did Robert Alexander and his predecessor . . . that the claim of the Plaintiff's decedent, and later the Plaintiff, was in existence, was being aggressively defended and litigated by the Nursing Home Trust, and that neither the nursing home Trust nor any of the Trustees had raised the claim that the Trust had been terminated on April 1, 1984. . . . It would be unfair and inequitable for this Court to allow the Defendant to profit from a situation in which a Trust was terminated, over one year prior to the time that this lawsuit was filed, where the Plaintiff was never so informed. Defendant American Investors would be allowed to profit from that, if this Court were to find in its favor. Under these circumstances, the Defendant American Investors had a duty to speak, because at all times it had knowledge of the termination of the Trust, but failed to disclose it until after the decision by the Court

of Appeals in the initial appeal.

## XI.

It was clear at both the July, 1991 and March, 1994 hearings that Robert Alexander was at all times aware of the salient facts, and that personnel at American Investors knew the facts since the date of the initial Trust termination in April, 1984. The initial Trust Agreement for the Arkansas Nursing Home Association Employee Benefit Trust states that upon termination, trustees must pay all obligations of the Trust, and must use the fund to continue insurance on employees insured under the policies and the families of employees, and must act to protect the employees that were insured at the time of the termination of the policies. Further, the Trust instrument recites that the trustees shall pay all obligations of the Trust. Robert Alexander testified previously in this matter that the Trust accomplished this by providing for the assumption of certain liabilities upon termination.

## XII.

. . . Under the circumstances presented by this case, Plaintiff's claim is a liability which should have been assumed in the various assumptions entered into by certain entities after the April 1, 1984 termination of the Trust.

## XIII.

Pursuant to the equitable doctrines of estoppel and waiver, American Investors is estopped to claim that it is not responsible for full satisfaction of the Judgment in favor of Plaintiff in this matter. At all times, Defendant, American Investors had knowledge of these transactions, and unquestionably had a duty to speak. Robert Alexander testified that he supervised this litigation matter from the time he became an employee. At any time during the course of the proceeding, he could have notified the Plaintiff, her Counsel, or his own attorneys, with respect to the termination of the Trust, but did not do so until September, 1990, after the first appeal to the Arkansas Court of Appeals. Robert Alexander admitted that his attorney in this matter has been reporting either to him or his predecessor at American Investors, throughout

this matter. He further testified that Fewell & Associates, third-party administrator, is a sister company of American Investors.

In its appeal from the above decree and judgment, the appellant argues the chancellor's order is clearly erroneous "because the record is barren of any facts that prove it was the successor in interest to the Trust and/or . . . assumed liabilities of the Trust for the claims made by Appellee." Appellant argues that the trial court's finding that it was the successor in interest to the Trust and the responsible party is clearly against the preponderance of the evidence.

The problem with appellant's argument is that the trial court held appellant estopped to claim that it is not responsible for full satisfaction of the judgment.

■ In *Robinson* v. *Buie*, 307 Ark. 112, 817 S.W.2d 431 (1991), our supreme court stated:

> Under the doctrine of res judicata or claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action. Privity of parties within the meaning of res judicata means "a person so identified in interest with another that he represents the same legal right." Res judicata bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated. Collateral estoppel or issue preclusion bars the relitigation of issues of law or fact actually litigated by the parties in the first suit.

307 Ark. at 114, 817 S.W.2d at 432-33 (citations omitted).

■ And in *Arkansas Department of Human Services* v. *Dearman*, 40 Ark. App. 63, 842 S.W.2d 449 (1992), we discussed the doctrine of collateral estoppel. We stated:

> The question of who may be bound by a judgment is considered in Freidenthal, Kane, and Miller, *Civil Procedure* § 14.9 (1985). In discussing the general issue underlying collateral estoppel, the authors state:

> When an issue has been litigated fully between the par-

ties, spending additional time and money repeating this process would be extremely wasteful. This is particularly important in an era when the courts are overcrowded and the judicial system no longer can afford the luxury — if it ever could — of allowing people to relitigate matters already decided.

*Id.* at 658. The authors also state that this doctrine applies only to persons who were parties or who are in privity with persons who were parties in the first action and that persons in a privity relationship are deemed to have interests so closely intertwined that a decision involving one necessarily should control the other. *Id.* § 14.13 at 682-83.

It has been suggested that privity is merely a word used to say that the relationship between one who is a party and another person is close enough that a judgement [sic] that binds the one who is a party should also bind the other person. This is the view taken in 18 Wright, Miller, and Cooper, *Federal Practice and Procedure* § 4448 (1981) where it is stated:

> As to privity, current decisions look directly to the reasons for holding a person bound by a judgment. This method should be adopted generally so that a privity label is either discarded entirely or retained as no more than a convenient means of expressing conclusions that are supported by independent analysis.

The Arkansas Supreme Court has said that privity within the meaning of res judicata means a person so identified in interest with another that he represents the same legal right. In *Restatement (Second) of Judgments* § 39 (1982) it is stated that "a person who is not a party to an action but who controls or substantially participates in the control of the present action on behalf of a party is bound by the determination of issues decided as though he were a party." It has also been held that the identity of parties or their privies for res judicata purposes is a factual determination of substance, not mere form.

40 Ark. App. at 67-68, 842 S.W.2d at 451-52 (citations omitted).

Under the law as cited above, we do not think the trial

court erred in holding that the appellant is estopped from claiming it is not responsible for full satisfaction of the judgment in favor of the appellee.

At this point, we want to note that the appellant filed a motion for summary judgment in this case; that the trial court advised the parties, by letter to their attorneys, that there were material facts at issue; but that no order was filed to that effect until after the evidentiary hearing had been held. Then, in the decree and judgment from which we have quoted above, the court stated that "it specifically finds that the Motion for Summary Judgment filed by the Defendant, American Investors should be denied."

In response to American Investors' motion for summary judgment, the appellee summarized the background of this litigation and stated that the court should hold the appellant estopped to deny liability in this matter.

Now, in light of that pleading, we want to also note that this case has had a long and tortuous history. A section of appellant's brief entitled "ABSTRACT OF PRIOR TESTIMONY" abstracts the testimony of Robert Alexander given at the July 1991 hearing on behalf of the Trustees long before American Investors was named as a party. At that time, Alexander testified that he had been an attorney for American Investors since September 1988. He testified that Fewell & Associates is a third-party administrator that administered the Nursing Home Association Trust, the Multiple Employer Trust that the nursing home people went into, the fully insured program for Paramount Life, and then Mr. Fewell purchased American Investors and Fewell & Associates administered the business of the new insurance company. Alexander testified that he also served as staff counsel for Fewell & Associates and went to work for them in September 1988.

Alexander again testified at the hearing held March 25, 1995, again as representative for the defendants, this time including American Investors. He testified that Pat Savelle was one of the beneficiaries of the Nursing Home Trust; that the "Employer Benefit Group" took over claims that occurred prior to April 1, 1984; and that another entity called Paramount Life Insurance Company came next. Alexander testified that Fewell & Associates was the third-party administrator for the Nursing Home Trust and that it is owned by Bob Fewell who is also the president of American Inves-

tors. He said that in July 1991, the party defendants were the trustees of the Nursing Home Trust; that he was employed then as now by American Investors; and that he came as a witness to "shed any light I could on the information that I had collected." He said he came to the July 1991 hearing for Fewell & Associates and had been involved in the case at least from February 1991. He said he did not come for American Investors, but American Investors and Fewell & Associates are sister companies; that he had gathered information in preparation for the hearing; and came to give the information he had. Alexander went to great lengths to explain why Ms. Savelle claim was not covered. He testified her claim fell into the category of claims which were ineligible because they were incurred after April 1, 1984. He said the Employer Benefit Group (MET) assumed only claims incurred prior to April 1, 1984, that had not been paid, or so called "run-off" claims; that Ms. Savelle's claim was not a run-off claim; that it assumed no claims incurred after April 1, 1984, unless the people continued to participate; that Ms. Savelle was disabled and not able to be employed; and that her claims were incurred after April 1, 1984, and their liability was not assumed. He testified further that American Investors had no connection with the Nursing Home Trust or the Employer Benefit Group, and it only assumed claims incurred under the Paramount Life Group Policy.

■ However, we think the appellant was involved in this litigation from its inception. Alexander, an employee of American Investors, was also employed by Fewell & Associates during this suit. He testified as a representative on behalf of the defendants even before American Investors became a party. He was at all times aware of the facts and testified that he was "the attorney responsible for this claim at American Investors since 1988."

■ Under the law regarding collateral estoppel, as set out in the cases of *Robinson v. Buie* and *Arkansas Department of Human Services v. Dearman, supra,* and applying the requirements of Ark. R. Civ. P. 52(a) that we not set aside the findings of fact made by a judge in a trial without a jury unless they are clearly erroneous or against the preponderance of the evidence, we think that the trial judge's decision in this case should be affirmed.

Affirmed.

JENNINGS, C.J., and ROBBINS, ROGERS, and STROUD, JJ., agree.

PITTMAN, J., dissents.

JOHN MAUZY PITTMAN, Judge, dissenting. As stated by the majority, Pat Savelle was an employee of Oak Lodge Nursing Home and had medical insurance through her employer with the Arkansas Nursing Home Association Employee Benefit Trust (hereinafter "Trust"). The personal representative of Savelle's estate, the appellee herein, brought suit against the trustees of the Trust seeking to enforce insurance coverage and to recover medical benefits. The lower court held that Savelle continued to have coverage and that the Trust was liable and found that American Investors Life Insurance Company was a subsequent successor to the Trust and liable for appellee's claims. American Investors now appeals from that decision.

I must respectfully dissent from the majority opinion affirming the decision holding American Investors liable because I believe that the lower court erred by precluding American Investors from presenting evidence as to the liability it assumed.

Savelle became totally disabled with cancer and terminated her employment in December 1983. The Trust terminated on April 1, 1984, and the Employer Benefit Group (hereinafter "Group") insured employees of the Oak Lodge Nursing Home who elected to continue coverage and assumed runoff claims, *i.e.*, claims incurred in the previous year but not yet submitted. The Group terminated on January 1, 1986, and a Multiple Employer Trust underwritten by Paramount Life assumed the same runoff claims. Coverage through Paramount Life terminated on December 31, 1988, and American Investors provided coverage for continuing employees of the nursing home and assumed *only* runoff claims.

This is the third appeal of this case. The first appeal involved the trial court's order holding that despite Savelle's termination of employment and because she was totally disabled, she was entitled to continued coverage. The trial court further found that the Trust was liable for Savelle's claims until her death on April 28, 1986. We affirmed. Savelle's estate then filed a motion in the lower court seeking to enforce the judgment against the trustees in their individual capacities. The court granted the motion in its April 8, 1992, order holding that the trustees were liable in their individual and representative capacities. The court further held that American Investors was a successor in interest to the Trust and, based on the

testimony of Robert Alexander that American Investors assumed claims outstanding as of January 1, 1989, that American Investors was liable for the judgment. The court reserved jurisdiction to name American Investors as a defendant. That decision was affirmed on appeal. American Investors was subsequently joined as a defendant. On May 31, 1995, the court held that American Investors was liable for the original judgment and *precluded* American Investors from presenting *any* evidence of the liability it assumed because the court had previously found that American Investors was the responsible party as the successor in interest. The court further found that American Investors could not collaterally attack the court's earlier finding, that Savelle had continuing coverage despite termination of her employment, because the finding was affirmed on appeal.

American Investors now appeals the May 31, 1995, order arguing that it was not a party to the case when liability was decided by the court, that it did not have an opportunity to defend its interest, and that appellee failed to prove that it was the successor in interest to the Trust.

I believe that the court erred in refusing to consider evidence concerning the liability American Investors assumed. American Investors argues that it assumed *only* runoff claims and that appellee has *never* shown or even asserted that Savelle's claim was a runoff claim. Before American Investors can be held liable for Savelle's claim, its assumed liability must be determined.

Appellee argues that American Investors is precluded from asserting a defense because it is bound by the court's earlier decision holding American Investors liable as successor, which was affirmed on appeal. Thus, she argues that the doctrines of "law of the case," *res judicata*, and collateral estoppel apply. Generally, the law of the case applies only against those who were parties to the case when the prior decision was rendered. *See Hodges* v. *Gray*, 321 Ark. 7, 901 S.W.2d 1 (1995); *McDonald's Corp.* v. *Hawkins*, 319 Ark. 2-A, 894 S.W.2d 136, supp'l op. (1995); *Willis* v. *Estate of Adams*, 304 Ark. 35, 799 S.W.2d 800 (1990); *Potter* v. *Easley*, 288 Ark. 133, 703 S.W.2d 442 (1986). The same is true for *res judicata* and collateral estoppel to apply. *Carmical* v. *City of Beebe*, 316 Ark. 208, 871 S.W.2d 386 (1994); *Arkansas Dep't of Human Services* v. *Dearman*, 40 Ark. App. 63, 842 S.W.2d 449 (1992). Here, the court considered the doctrines of *res judicata*, law of the case and collateral estoppel as

a basis of establishing American Investors' liability. These doctrines have no application to this fact situation because American Investors was not a party to the case when its liability was determined.

Lastly, I do not believe the "privity" doctrine has any application to the case under consideration. A person is considered to be in privity with a party when that person controls or substantially participates in the control of the present action on behalf of a party. *Arkansas Dep't of Human Services* v. *Dearman, supra*. Robert Alexander testified that he did not appear on behalf of American Investors at the hearing at which the court determined American Investors' liability. The majority opinion places emphasis on the fact that Robert Alexander is associated with Fewell and Associates and American Investors, both of which are owned by Bob Fewell. Because of Fewell and Associates' participation, the majority reasons that American Investors is now estopped from defending its interest. Privity requires that the entities have similar, non-adverse interests. *Id.* Fewell and Associates was a third-party administrator and, unlike American Investors, was not responsible for a judgment against the Trust. It appeared only to produce its records pertaining to its previous administration of the Trust, the Employee Benefit Group, and Paramount Life.

Because the court ruled that it had previously determined that American Investors was liable and refused to give it an opportunity to present evidence regarding the liability it assumed, the case should be remanded.

I would reverse and remand for the court to decide American Investors' liability consistent with this opinion.