Shaun SMITH *v.* OFFICE of CHILD
SUPPORT ENFORCEMENT

CA 01-328                                    64 S.W.3d 789

Court of Appeals of Arkansas
Division II
Opinion delivered January 9, 2002

*David J. Throesch*, for appellant.

*Amy L. Ford*, for appellee.

JOHN E. JENNINGS, Judge. This is an appeal from an order of paternity. For reversal, appellant contends that the paternity action brought against him was barred under principles of both *res judicata* and collateral estoppel. We disagree and affirm.

The parties agreed on the following facts. Appellant Shaun Smith and Michelle Lowery (then Michelle Gillian) dated in 1994 during the months of May through October. Shortly after that relationship ended, Michelle began dating Willis Lowery. Michelle at first told appellant that she was pregnant with his child. She gave birth to a baby girl on June 29, 1995. Michelle and Lowery executed an acknowledgment of paternity, and Lowery's name was

placed on the child's birth certificate. On April 1, 1996, Michelle and Lowery were married.

Michelle filed for divorce against Lowery after they separated in August of 1996. Lowery entered his appearance in the divorce by filing a written waiver to the proceedings. The decree, dated August 18, 1997, recited that the parties had married on April 1, 1996, and it provided that one child had been born of the marriage, a female born on June 29, 1995. Michelle was awarded custody of the child, while Lowery was granted reasonable visitation rights and was ordered to pay child support and one half of the child's medical expenses not covered by insurance.

Michelle later assigned her child-support rights to appellee, the Office of Child Support Enforcement. On November 24, 1998, appellee filed a motion for contempt against Lowery alleging that he had failed to pay child support. Lowery defended that action by contending that he was not the child's biological father. The court ordered DNA testing, and the results excluded Lowery as the father of the child. On April 6, 1999, the court entered an order finding that Lowery was not the child's father and relieving him of his financial obligations with regard to the child.

On June 14, 1999, appellee filed this paternity action against appellant. In response, appellant affirmatively pled that Michelle and Lowery's 1997 divorce decree established paternity of the child in Lowery and that any claim against him was barred by *res judicata* and collateral estoppel. The parties agreed, however, to DNA testing, and the results indicated a 99.99% probability that appellant was the child's biological father. On December 11, 2000, the court entered a judgment of paternity against appellant. This appeal followed.

As he argued below, appellant contends that the 1997 divorce decree reciting that "one child was born of the marriage" established paternity of the child in Lowery and that this suit against him was barred by *res judicata* and collateral estoppel. In support of this argument, he relies on the decision in *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). There, the court held that, as between parties to a divorce, *res judicata* does bar a former husband and wife from relitigating paternity when they agreed in the divorce action that a child had been born of the marriage. Appellant acknowledges that he was not a party to the 1997 divorce, but he contends that it is of no consequence. The supreme court, however, has recently addressed this precise argument under facts similar to the case at bar and has decided the issue

unfavorably to appellant's position. *Office of Child Support Enforcement v. Willis*, 347 Ark. 6, ___ S.W.3d ___ (November 15, 2001).

In *Willis*, John and Marigayle Triplett divorced in 1992. The decree stated that the "parties hereby have one (1) child," and the decree provided that Marigayle would have custody of the child and John would pay support. The Tripletts later remarried, but Marigayle again filed for divorce in 1997. In that proceeding, John asserted that he was not the child's biological father, and genetic testing proved him not to be. In the 1998 decree, the court found that John was not the child's father, and John was not ordered to pay child support.

The Office of Child Support Enforcement (OCSE) began paying support to Marigayle, who then stated in an affidavit that Christopher Willis was the child's biological father. Genetic testing showed that there was a 99.98% probability that Willis was the child's father. OCSE then filed a paternity action against Willis, who raised the affirmative defenses of *res judicata* and collateral estoppel based on the 1992 decree. The trial court agreed with Willis, but the supreme court reversed, holding that the suit was not barred by either *res judicata* or collateral estoppel.

■ The court noted that *res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. The court held that *res judicata* did not apply because Willis was not a party to the divorce decree and was not in privity with either John or Marigayle, the parties to the divorce decree.

■ In rejecting Willis's defense of collateral estoppel, or issue preclusion, the court observed that four elements are required before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. In addition, citing *Arkansas Dep't of Human Servs. v. Dearman*, 40 Ark. App. 63, 842 S.W.2d 449 (1992), the court adopted the rule that, although collateral estoppel may be asserted by a stranger to the first judgment or decree, the party against whom it is asserted must have been a party to the earlier action and

must have had a full and fair opportunity to litigate the issue in the first proceeding. The court held that collateral estoppel did not bar the present suit because the issue of paternity was not "actually litigated" in the 1992 divorce proceeding since neither John nor Marigayle had put the child's paternity in issue. The court also held that the " *Dearman* rule" was not satisfied in that John did not have the opportunity to fully and fairly litigate the issue of paternity in the 1992 divorce proceeding because he did not have any idea at that time that he was not the child's father.

■ In light of the decision in *Willis*, the appellant in this case cannot succeed in his claim that this action is barred under principles of *res judicata* or collateral estoppel. Appellant was not a party to the 1997 divorce, nor was he in privity with the parties to the divorce. Furthermore, the issue of paternity was not actually litigated in the 1997 divorce. The trial court did not err in its ruling.

■ Appellant also contends that he should have been made a party to the contempt action brought against Lowery and that his absence impeded his ability to protect his interests. Appellee responds that appellant's defenses of *res judicata* and collateral estoppel would have failed because Lowery had executed an acknowledgment of paternity without benefit of genetic testing and that the version of Ark. Code Ann. § 9-10-115 (Supp. 1995) in effect at the time allowed modification within a five-year period. We simply note that the defenses raised by appellant are not valid now, nor would they have been at that earlier point in time.

Affirmed.

PITTMAN and VAUGHT, JJ., agree.