EAST TEXAS MOTOR FREIGHT LINES, INC. *v.* Ellen
FREEMAN, Denise CLARK, Ted Clifton TULLOS, Sr.,
Individually and For the Use and Benefit of Ted Clifton
TULLOS, Jr., A Minor, and Clifford GILLESPIE

85-240 713 S.W.2d 456

Supreme Court of Arkansas
Opinion delivered July 21, 1986
[Rehearing denied September 15, 1986.*]

---

* Purtle, J., would grant.

540

*Wright, Lindsey & Jennings*, for appellant.

*Hale, Fogleman & Rogers*, for appellees Ellen Freeman, Denise Clark, and Ted Clifton Tullos, Sr., Individually and for the use and benefit of Ted Clifton Tullos, Jr., a minor.

*Moore, Moore, Hart & Barton*, for appellee Clifford Gillespie.

STEELE HAYS, Justice. At about 6 o'clock on the evening of June 15, 1981 eleven vehicles collided in dense smoke along a stretch of Interstate Highway 55 in Crittenden County, Arkansas. Earlier that day farm workers of Clifford Gillespie set fire to a wheat field being prepared for soybean planting. The wheat field was to the east of the highway and the smoke carried to the west, primarily affecting north bound traffic.

Appellee Ellen Freeman was driving her car in a north bound lane with her daughter, Denise Clark, and her grandson Cliff Tullos, Jr., who are also appellees, riding as passengers. When Mrs. Freeman encountered the smoke she reduced her speed and as vision became increasingly difficult she saw one vehicle in the left lane and a tractor trailer of Abbott Laboratories, driven by Donald Sosnowski, partially blocking the right lane. She came to a stop and moments later an East Texas Motor Freight tractor trailer struck her vehicle and the Abbott vehicle simultaneously.

Its driver, Noble McCreary, died in the collision.

This litigation in Crittenden County began when Abbott filed an action against East Texas Motor Freight, Ellen Freeman, Clifford Gillespie and others. Denise Clark and Ted Tullos intervened seeking damages for their injuries and Mrs. Freeman claimed damages for property loss and personal injuries against Gillespie and East Texas Motor Freight. There were cross claims for contribution.

Subsequently the wife and children of Noble McCreary filed a wrongful death action in federal court against Clifford Gillespie. Ellen Freeman, ETMF and others were joined as third party defendants in that litigation for purposes of contribution. In the course of those proceedings the district judge entered an order that all parties would be deemed to have sought contribution from all other parties and all such claims would be treated as disputed. Mrs. Freeman tried unsuccessfully to consolidate her claims in state court with the proceedings in federal court.

The federal case was tried in September of 1983 and resulted in verdicts in favor of McCreary's heirs and other claimants against Gillespie. The jury found that Gillespie was entirely at fault and that McCreary, Freeman and Sosnowski were not at fault.

Based on those findings ETMF moved for summary judgment in the state proceedings on grounds of res judicata and alternatively that Freeman, Clark and Tullos were collaterally estopped from relitigating the issues in state court. Summary judgment was denied and the case was tried, resulting in verdicts against ETMF for Mrs. Freeman of $41,849 for Ms. Clark of $27,086 and for Ted Tullos of $325. Gillespie was exonerated. A remittitur of $12,000 was ordered by the trial court as to the verdict on behalf of Mrs. Freeman.

ETMF has appealed. Appellees are Freeman, Clark, Tullos and Gillespie. Our jurisdiction attaches because the case involves the law of torts. Rule 29(1)(o).

ETMF challenges the trial court's rulings on the issues of res judicata and collateral estoppel, the admissibility of the testimony of a state trooper, the propriety of several jury instructions, in limiting the cross-examination of Ellen Freeman, and in

allowing prejudgment interest on the property damage award.

### Res Judicata and Collateral Estoppel

The similarity between the doctrines of res judicata and collateral estoppel has been the cause of some confusion, but the two are distinct. Res judicata or claim preclusion bars the relitigation of issues which were actually litigated or which *could* have been litigated in an earlier suit. *Allan* v. *McCurry*, 449 U.S. 90 (1980). Whereas, collateral estoppel requires four elements before a determination is conclusive in a subsequent proceeding: 1) the issue sought to be precluded must be the same as that involved in the prior litigation; 2) that issue must have been actually litigated; 3) it must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment. Newbern, Arkansas Civil Practice and Procedure (The Harrison Company, 1985) § 26-12, p. 262. *Smith* v. *Roane*, 284 Ark. 568, 683 S.W.2d 935 (1985); *Lovell* v. *Mixon*, 719 F.2d 1373 (8th Cir. 1983).

Here, Denise Clark and Ted Tullos were not parties to the federal case, and Mrs. Freeman was joined only for purposes of contribution. Mrs. Freeman was not obligated to counterclaim against ETMF in the federal action because of her pending state claim. See F.R.C.P. 13(a). Moreover, the attempt to consolidate her claims pending in state court with the federal action was rejected by the federal judge. Hence, the issues involving the liability of ETMF for the injuries and property claims of the appellees, Freeman, Clark and Tullos, had not been litigated prior to the trial in Crittenden County.

In several cases we have applied the doctrine of collateral estoppel to attempts to relitigate issues of negligence where the liability was derivative. In *Barnett* v. *Isabell*, 282 Ark. 88, 666 S.W.2d 393 (1984), the Barnett family, after successfully suing the employer of Robert Isabell, sued Isabell for injuries arising out of the same occurrence. We affirmed the trial court's granting of summary judgment because the liability was entirely derivative and the issues had been decided. The rationale for the doctrines is the policy of the law to end litigation "by preventing a party who had had one fair trial of a question of fact from again drawing it into controversy . . ." See also *Davis, Admn.* v. *Perryman*, 225 Ark. 963, 286 S.W.2d 844 (1956) and *Ted Saum*

*& Co. v. Swaffor*, 237 Ark. 971, 377 S.W.2d 606 (1964).

■ But we have never extended the concept of collateral estoppel to the point that claimants who have had no trial at all, nor any opportunity to present their claims, are precluded by the outcome of litigation to which they were not privy. We believe justice preserves to everyone the right to his "day in court."

### Testimony of Trooper Whitley

ETMF insists the trial court should have granted its motion for a mistrial when the trial court permitted State Trooper Terrie Whitley, to testify about "extra" skid marks which could be seen in photographs of the accident scene but which she had not observed during her investigation, nor noted on her accident report. On her accident report she indicated the ETMF vehicle had twenty-four feet of skid marks. ETMF contends the effect of the trial court's ruling qualified Trooper Whitley to testify on accident reconstruction which she was not competent to do.

We have been unable to find anything in the officer's testimony which is particularly damaging to ETMF. The length of the "extra" skid marks is never stated and so far as we can determine, the testimony may have been inconsequential. The only conceivable conclusion which might arise from extra skid marks would relate to the speed and the officer made it perfectly plain that she was not able to determine the speed of any of the vehicles and made no attempt to do so. The officer's testimony involved essentially what she could see in several photographs. All parties were permitted to question her on these details and the trial court offered to caution the jury to make its own interpretation of the photographs. The offer was refused. In short, we find nothing in Officer Whitley's testimony that meets the requirement of substantial prejudice under Rule 103 of the Uniform Rules of Evidence.

### Future Pain and Suffering

■ ETMF urges the jury should not have been instructed to consider future pain and suffering, mental anguish or the permanency of injuries in assessing damages. We concede the proof is marginal but on balance we cannot say it was so deficient as to fail to produce a submissible issue for the jury. No hard and

fast rule exists by which to test the permanency of injuries and to a degree each case must be examined on its own.

ETMF cites *St. Louis Iron Mountain & Southern Ry. Co.* v. *Bird*, 106 Ark. 177, 153 S.W. 104 (1913) and other cases holding that a jury may not consider any claims for permanent injuries unless they are proved to a reasonable certainty, supported by affirmative proof of permanency. *Midwest Bus Lines, Inc.* v. *Williams*, 243 Ark. 854, 422 S.W.2d 869 (1968).

■■ Ms. Clark testified that she sustained a head injury and suffered nausea, vomiting and severe and continuing headaches up to the time of trial, a period of approximately three and a half years. Viewing that testimony in a light most favorable to the appellees a jury could conclude that consequences of injuries which continue over three and a half years will occur in the future. *Bailey and Davis* v. *Bradford*, 244 Ark. 8, 423 S.W.2d 565 (1968). Moreover, lay testimony without expert corroboration is sufficient. Id.

Mrs. Freeman's injuries are more emotional than physical. She sustained a blow to the forehead, a cut on her back and a contusion on her leg the size of a fist. Ms. Clark testified that since the accident her mother avoids driving or permitting her grandchildren to go with her when she is driving, that she makes excuses to keep from driving and becomes a "total wreck" a couple of days before a trip; that she "goes all to pieces just from driving" home from Ms. Clark's house and is paranoid about 18-wheelers behind her.

■ While we have held that future pain and permanency must be established with reasonable certainty and not left to the jury's speculation and conjecture, *Handy Dan Improvement Center, Inc.* v. *Peters*, 286 Ark. 102, 689 S.W.2d 541 (1985), we have also said the jury may consider the nature, extent and persistency of the injuries and may rely on lay testimony. Id. Between the two extremes of objective injuries on the one hand and subjective complaints on the other, lies a grey area "in which the issue of permanency becomes a matter of judgment." *Belford* v. *Humphrey*, 244 Ark. 211, 424 S.W.2d 526 (1968). All in all we are satisfied there was enough evidence of permanency to submit the issue to the jury.

*AMI 901(b)—Danger Ahead*

The trial court instructed the jury in accordance with AMI 901(b):

> When the driver sees danger ahead, then he is required to use ordinary care to have his vehicle under control as to be able to check its speed or stop it, if necessary, to avoid damage to himself or others.

And the trial court gave AMI 614:

> A person who is suddenly and unexpectedly confronted with danger to himself or others not caused by his own negligence is not required to use the same judgment that is required of him in calmer and more deliberate moments. He is required to use only the care that a reasonably careful person would use in the same situation.

ETMF submits AMI 901(b) should not be given when a driver is confronted without warning to an emergency situation. *Home Insurance Co.* v. *Harwell*, 267 Ark. 884, 568 S.W.2d 17 (1978). We believe both instructions were appropriate to the proof.

■ It is evident the drivers could see smoke crossing the highway from some distance away. That circumstance was enough to alert approaching motorists of a potential danger and to justify the jury being told the requirements of the law in response to those conditions. Appellants argue that Noble Mc-Creary had no reason to expect the smoke to be so thick he could not see. But that was for the jury to determine, as we know of no rule that permits a motorist, on seeing smoke ahead, to assume it will be so lacking in density that vision will not be impaired.

The emergency instruction was appropriate to the conditions which were shown to have existed when the smoke screen was actually entered and blockage of the highway encountered. The trial court was right to give both instructions.

*AMI 902—Superior Right of the Forward Vehicle*

ETMF objects to the giving of AMI 902:

> When two vehicles are traveling in the same direction, the vehicle in front has the superior right to the use of the

highway for the purpose of stopping to avoid vehicles ahead, and the driver behind must use ordinary care to operate his vehicle in recognition of this superior right. This does not relieve the driver of the forward vehicle of the duty to use ordinary care and to obey the rules of the road.

 It contends this instruction applies only to vehicles that are traveling, and here the forward vehicle was stopped. Appellees point out that the instruction obviously contemplates the situation presented by this case, as it mentions the right of the forward driver to stop, to avoid vehicles ahead, which is exactly what Mrs. Freeman did. We agree.

Obviously this instruction is not intended to apply in every situation where one vehicle strikes another from behind. For example, in *Harlan* v. *Curbo*, 250 Ark. 610, 446 S.W.2d 459 (1971), it was held inapplicable where one vehicle struck another just as the forward vehicle had pulled out of a driveway. And in *Saliba* v. *Allison*, 192 Ark. 1021, 96 S.W.2d 934 (1936) where a truck, after turning across the highway, continued onward or stopped partially on the highway. We said:

> The only error in this contention is that Saliba had ended his forward trip on highway No 61, had stopped on the roadside, then had turned sharply to his left and had driven upon the highway. No kind of watchfulness could have anticipated this action.

But the instruction has a wider application than when two vehicles are moving in tandem along the highway. In *Cohen* v. *Ramey*, 201 Ark. 713, 147 S.W.2d 338 (1941) the forward car slowed down and signaled a left turn. While signalling the driver moved slightly to the right to permit cars behind her to pass, continued signalling and was struck as she turned onto an adjoining road. The trial court gave an earlier version of 902 and we affirmed:

> The short or temporary stop that Flora Ramey made to allow two cars close to her to pass did not in any sense amount to a parking or stopping on the roadside. It was a momentary or temporary stopping and a thing she had to do before she could continue the turn to the east side of the road she was making . . . The momentary stopping of her

car did not relieve appellant who was travelling behind her of taking notice of the movement of her car or of the signals being given by her.

While there is no testimony as to the distance between the Freeman car and the ETMF truck prior to the impact, it is clear the two vehicles were traveling north in close proximity, as the truck struck the car momentarily after the car stopped to avoid other vehicles. That is a sufficient basis for the instruction. *Smith* v. *Alexander*, 245 Ark. 567, 433 S.W.2d 157 (1968).

## Limitation on Cross-Examination

ETMF contends it should have been permitted to question Mrs. Freeman about loss of time on the job due to her injuries. On direct examination she said she missed a month of work. On cross-examination she was asked:

Q: I believe you testified you missed three or four weeks of work?

A: A month.

Q: A month's work. But you didn't lose any wages—

Counsel for the appellee objected and after an unreported discussion the court sustained the objection and instructed counsel to rephrase his question. The matter of wages was not pursued.

ETMF argues it should have been permitted to show Mrs. Freeman lost no wages as a result of her injuries. We disagree. Assuming the issue was whether or not she was paid during the time she was off, the collateral source rule applies. *Amos, Administrator* v. *Stroud and Salmon*, 252 Ark. 1100, 482 S.W.2d 592 (1972). Whether she received the money from her employer or from an insurance policy, she, rather than the alleged tortfeasor, is entitled to the benefit of the collateral source, even though in one sense a double recovery occurs. *Vermillion* v. *Peterson*, 275 Ark. 37, 630 S.W.2d 30 (1982). The law rationalizes that the claimant should benefit from the collateral source recovery rather than the tortfeasor, since the claimant has usually paid an insurance premium or lost sick leave, whereas to the tortfeasor it would be a total windfall.

*Prejudgment Interest*

Over East Texas Motor Freight's objection the trial court awarded prejudgment interest of six percent from June 25, 1981 until March 15, 1985 on $6,681.26, the sum of Mrs. Freeman's property damage claim. Because the verdict did not distinguish between property damage and personal injuries, ETMF argues that prejudgment interest is not recoverable. *Lovell* v. *Marianna Federal Savings & Loan*, 267 Ark. 164, 589 S.W.2d 597 (1979). It contends that without a special verdict covering property damage it is impossible to determine whether the jury intended to award any property damage.

Mrs. Freeman's response is that an exhibit itemizing her property loss was introduced without objection and the amounts of her property claims were never questioned by ETMF. Even so, we are unwilling to establish a precedent for allowing prejudgment interest where only a general verdict is returned which includes an award for personal injuries. If a plaintiff intends to claim prejudgment interest, we think he must request a specific verdict on property damage.

The judgment is modified to eliminate prejudgment interest and with that modification is

Affirmed.

HOLT, C.J., not participating.