STATE of Arkansas OFFICE of CHILD SUPPORT
ENFORCEMENT *v.* Christopher WILLIS

01–238                                                  59 S.W.3d 438

Supreme Court of Arkansas
Opinion delivered November 15, 2001

*Greg L. Mitchell,* for appellant.

*Gilbert Law Firm,* by: *Melinda R. Gilbert* and *Robert T. James,* for appellee.

ROBERT L. BROWN, Justice. This appeal involves paternity. The sole question presented is whether the chancery court erred in dismissing the paternity complaint of the appellant, which is the State of Arkansas Office of Child Support Enforcement (OCSE). We believe that the chancery court did err in dismissing that complaint, and we reverse the dismissal order and remand the case for further proceedings associated with the paternity complaint.

On February 13, 1982, John and Merigayle Triplett married. On November 23, 1988, Merigayle had a daughter, Megan. On February 26, 1992, the Tripletts divorced. In the resulting divorce decree entered by the chancery court (1992 decree), the court approved the parties' agreement regarding custody of Megan. Specifically, the decree stated:

> The parties hereby have one (1) child, Megan Elizabeth Triplett, born November 23, 1988, and the Plaintiff [Merigayle Triplett] shall have sole custody of said child with Defendant [John Triplett] having reasonable and seasonable visitation rights.

> The Defendant shall pay child support for the said child of $60.00 per week.

> The Defendant shall be responsible for all ordinary doctor, hospital, dental and prescription drug bills for the child.

On February 14, 1993, John and Merigayle married for a second time. At some point during the late summer of 1997, Merigayle told John that he might not be Megan's father, and Merigayle named appellee Christopher Willis as Megan's putative father. In September of 1997, John called Willis and confronted him about the 1988 affair. Two days later, Merigayle called Willis and told him that he was Megan's father.

When Willis first knew of his biological relationship to Megan is a matter of factual dispute in this case. According to Willis's affidavit, Willis and Merigayle had a romantic relationship which lasted from January of 1988 to March of 1988. Although Willis saw Merigayle at various social engagements and restaurants after March 1988, he asserts that the two did not speak again until September of 1997. Willis claims that it was not until September of 1997 that he first knew of a possible biological link with Megan.

Merigayle disputes this in her affidavit. She avers that she told Willis that she thought the child was his as early as May of 1989, six months after Megan was born. She asserts that at that time, Willis called her to discuss personal matters, and he heard a child crying in the background. He asked about the baby, and Merigayle told him that the timing of her pregnancy indicated that the child was his. According to Merigayle, Willis was shocked to hear this and hurriedly got off the telephone. Merigayle adds that she and Willis again discussed the situation in the winter months of 1992. According to Merigayle, the next time she spoke with Willis concerning his being Megan's biological father was in September of 1997.

On March 14, 1997, Merigayle filed her complaint for divorce from John. In his answer to Merigayle's petition for divorce, John asserted that he was not Megan's biological father, and he requested DNA testing to establish his biological relationship to Megan. Merigayle did not object to this testing. The chancery court granted his request, and the testing excluded John as Megan's biological father. Following this testing, in a divorce decree entered on January 20, 1998 (1998 decree), the chancery court found that John was not Megan's biological father. The 1998 decree did not order John to pay child support for Megan. No reference was made in the 1998 decree to the 1992 decree. Merigayle did not appeal the 1998 decree. After the 1998 decree, OCSE paid support to Merigayle.

On June 4, 1998, Merigayle averred in an affidavit to OCSE that Willis was Megan's biological father. On June 22, 1998, OCSE ordered Willis, Megan, and Merigayle to submit to genetic testing to determine paternity. Willis did not challenge this testing. On July 22, 1998, the test results were returned, which showed that there was a 99.98% probability that Willis was Megan's biological father.

On August 12, 1998, after learning of the test results, OCSE filed a paternity complaint against Willis pursuant to its statutory authority. See Ark. Code Ann. § 9-10-104(a)(4) (Repl. 1998); Ark. Code Ann. § 9-12-210(d)(2) (Repl. 1998). In Willis's amended answer to OCSE's petition, he denied that he was Megan's father and raised affirmative defenses to the petition, including res judicata and collateral estoppel. Both affirmative defenses were based on the 1992 decree. Willis also named John as a defendant to the paternity complaint and cross-claimed against Merigayle and John for fraud and the tort of outrage. He sought injunctive relief and money damages against Merigayle and John. Willis concluded with multiple prayers for relief, including a prayer that the paternity complaint against him be dismissed.

On April 21, 1999, the chancery court dismissed OCSE's paternity petition against Willis. OCSE appealed the dismissal, and this court dismissed the appeal pursuant to Ark. R. Civ. P. 54(b), because the chancery court's order did not dispose of Willis's tort claims against Merigayle and John. *See Office of Child Support Enforcement v. Willis,* 341 Ark. 378, 17 S.W.3d 85 (2000).

After dismissal of the first appeal, Willis agreed to voluntarily nonsuit the cross-claims against John and Merigayle pursuant to Ark. R. Civ. P. 41(a).[1] On November 11, 2000, the chancery court entered an order reflecting this nonsuit and found as follows:

> That based upon the entry of a 1992 Divorce Decree establishing John Triplett as the legal father of the child, Megan Elizabeth Triplett, born November 23, 1998, [sic] the Court hereby finds that paternity of the child was established in 1992. Thus, the pending action for paternity, is improper.[2]

The chancery court dismissed OCSE's paternity complaint.

■ OCSE's sole point on appeal is that the chancery court erred in dismissing OCSE's paternity complaint as improper on grounds that paternity had been established under the 1992 decree. Initially, we refer to the precepts that govern our review. We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancery court unless it is clearly erroneous. *Moon v. Marquez,* 338 Ark. 636, 999 S.W.2d 678 (1999); *Office of Child Support Enforcement v. Eagle,* 336 Ark. 51, 983 S.W.2d 429 (1999). A finding of fact by the chancery court is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Huffman v. Fisher,* 337 Ark. 58,

---

[1] This court has held that a plaintiff cannot nonsuit certain claims against a defendant in order to circumvent Rule 54(b). *See Haile v. Arkansas Power & Light Co.,* 322 Ark. 29, 907 S.W.2d 122 (1995); *Ratzlaff v. Franz Foods,* 255 Ark. 373, 500 S.W.2d 379 (1973). The underlying reason is that the principle of *res judicata* requires all claims against a defendant arising out of common facts to be brought, and nonsuiting certain claims would lead to piecemeal appeals and splitting a cause of action. We have also held that nonsuiting claims against separate defendants to avoid a Rule 54(b) dismissal is permissible, because joining separate defendants is not mandatory under the principle of *res judicata. See Driggers v. Locke,* 323 Ark. 63, 913 S.W.2d 269 (1996). Here, Willis's nonsuited claims are cross-claims, and it is not mandated that they be brought. *See* Ark. R. Civ. P. 13(f). Accordingly, Rule 54(b) is not circumvented.

[2] The date of Megan's birth was misstated in the November 11, 2000 order. Her date of birth was November 23, 1988.

987 S.W.2d 269 (1999); *RAD-Razorback Ltd. Partnership v. B. G. Coney Co.*, 289 Ark. 550, 713 S.W.2d 462 (1986). It is this court's duty to reverse if its own review of the record is in marked disagreement with the chancery court's findings. *Dopp v. Sugarloaf Mining Co.*, 288 Ark. 18, 702 S.W.2d 393 (1986) (citing *Rose v. Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Walt Bennett Ford v. Pulaski County Special Sch. Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981)).

In support of its argument for reversal, OCSE emphasizes that the 1992 decree did not address the issue of paternity. Nor, it contends, was paternity an issue in that divorce. Moreover, OCSE claims that when the parties remarried in 1993, this had the effect of annulling the 1992 decree as it related to Megan. OCSE cites *Oliphant v. Oliphant*, 177 Ark. 613, 7 S.W.2d 783 (1928), in support of this proposition. Furthermore, OCSE maintains, when John requested blood testing in 1997 to determine whether he was Megan's father, Merigayle did not object to that or raise *res judicata* as a bar to the testing. It was not until the paternity complaint was filed in 1998 against Willis that he raised the affirmative defenses of *res judicata* and collateral estoppel. Because of this, OCSE contends that *res judicata* based on the 1992 decree does not bar the paternity action. The agency further contends that because Merigayle did not raise this affirmative defense as part of the paternity testing of John which led to the 1998 decree, she waived that defense and collateral estoppel as well. This, according to OCSE, resulted in the 1998 decree, which was inconsistent with the 1992 decree on the issues of John's paternity and his obligation to support Megan. Only the later divorce decree should control, OCSE urges, and only that later decree should be given *res judicata* effect. OCSE concludes that it is the 1998 decree that left Megan with no legal father and no support, which opened the door to a paternity action.

Willis responds that the chancery court really relied on the principle of collateral estoppel and not *res judicata* in dismissing OCSE's paternity complaint and that collateral estoppel applies in this case. Collateral estoppel governs this case, he argues, and supports reliance on the 1992 decree rather than OCSE's theory of inconsistent decrees. He maintains that *Oliphant v. Oliphant, supra,* does not control this case, because that case dealt with a change of circumstances caused by a second marriage and the effect on child custody. Finally, he urges that the 1992 decree, as it related to paternity, could not be modified after three years under Ark. Code Ann. § 9-10-115(f) (Repl. 1998).

■ We agree with Willis that the *Oliphant* case does not control this paternity issue. In *Oliphant*, even though two marriages and two divorces were also involved, the issue was whether a redetermination of child custody was necessary. The father urged that a review was unnecessary. This court held, however, that the second marriage constituted a change of circumstances which warranted redetermination of the custody issue. The principle of changed circumstances, however, is not a relevant factor in paternity matters.

■ It is not clear from the chancery court's order whether the court relied on the doctrine of *res judicata* or collateral estoppel in deciding that the 1992 decree rendered the paternity action "improper." Accordingly, we will discuss both doctrines in our analysis, even though Willis relies on collateral estoppel in his brief on appeal. We turn first to the question of whether *res judicata* prevents OCSE's paternity action. *Res judicata* bars relitigation of a subsequent suit when: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999) (citing *Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998); *Hamilton v. Arkansas Pollution Control & Ecology Comm'n*, 333 Ark. 370, 969 S.W.2d 653 (1998)). *Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Williams, supra; Wells v. Arkansas Pub. Serv. Comm'n*, 272 Ark. 481, 616 S.W.2d 718 (1981). Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Williams, supra; Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660 (1988). The policy of the doctrine is to prevent parties' relitigating issues on which they have already been given a fair trial. *McCormac v. McCormac*, 304 Ark. 89, 799 S.W.2d 806 (1990).

■ We conclude that the principle of *res judicata* based on the 1992 decree could not govern the outcome of this case for one simple reason: the 1992 divorce action and the 1998 paternity action do not involve the same parties or their privies. While OCSE, arguably, might be in privity with Merigayle due to support payments, Willis was not in privity with either John or Merigayle. Certainly, the interests of Willis and John were not aligned in the 1992 divorce proceeding. Indeed, John was unaware that he was not the biological father. Nor can Willis successfully claim that his

interests and Merigayle's were the same in the 1992 divorce. Willis was not a party to that litigation and did not participate in any way. Under similar circumstances, our court of appeals has held that there was no substantial identification between the mother and an alleged biological father who did not participate in the divorce litigation. *See Scallion v. Whiteaker*, 44 Ark. App. 124, 868 S.W.2d 89 (1993).

■ We are aware, of course, that this court has applied the principle of *res judicata* for purposes of deciding paternity based on a previous divorce decree in two fairly recent cases. *See Office of Child Support Enforcement v. Williams, supra; McCormac v. McCormac, supra.* In *Williams*, we held that a former husband's agreement to a divorce decree which stated that children were born of the marriage and his signing an agreed order on child support foreclosed a later action to establish that he was not the biological father for purposes of abating child support. In *McCormac*, we held that the mother of a child was barred from contesting her former husband's paternity in a subsequent dispute over visitation when the mother had previously agreed in the property settlement agreement that one child had been born of the marriage. Thus, it is clear that *res judicata* does bar relitigation of the paternity issue between the former husband and wife when the parties have agreed in the divorce action that a child was born of the marriage. We note in this regard that Merigayle did not argue the *res judicata* effect of the 1992 decree in the 1998 divorce proceedings and, indeed, did not object to John's request for blood testing to establish Megan's paternity. Nor did she appeal the 1998 decree. As a result, the 1998 decree leaves Megan without a biological father.

■ In the instant case, Willis was not a party to the divorce decree and was not in privity with a party to the divorce decree. We hold that the 1992 decree does not bar a subsequent paternity action between OCSE and Willis under the principle of *res judicata*.

The next question is whether OCSE is collaterally estopped from bringing the paternity complaint against Willis. Willis relies heavily on this doctrine of issue preclusion and vigorously contends that the question of paternity was resolved in the 1992 decree and cannot be raised a second time. OCSE's retort is that the paternity question was never actually litigated in 1992, and, thus, collateral estoppel does not pertain.

■ Collateral estoppel, or issue preclusion, requires four elements before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Palmer v. Arkansas Council on Economic Educ.*, 344 Ark. 461, 40 S.W.3d 784 (2001); *Fisher v. Jones*, 311 Ark. 450, 844 S.W.2d 954 (1993); *East Texas Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 713 S.W.2d 456 (1986).

■ Collateral estoppel may be asserted by a stranger to the first judgment or decree, but the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in that first proceeding. 47 AM. JUR. 2d *Judgments* §§ 645, 650 (citing *Arkansas Dep't of Human Servs. v. Dearman*, 40 Ark. App. 63, 842 S.W.2d 449 (1992)). It is apparent that our court of appeals has adopted this rule, though this Court has not. In *Coleman's Serv. Ctr., Inc. v. FDIC*, 55 Ark. App. 275, 935 S.W.2d 289 (1996), the appellate court said:

> Collateral estoppel is based upon the policy of limiting litigation to one fair trial on an issue and is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question.

*Coleman's*, 55 Ark. App. at 291, 935 S.W.2d at 299 (citing *Arkansas Dep't of Human Servs. v. Dearman, supra*). We agree with this statement by our court of appeals, as do a majority of jurisdictions, and hereby adopt this principle of collateral estoppel.

■ There are two reasons why collateral estoppel does not apply to the case at bar. First, this case does not satisfy the *Dearman* rule in that John did not have the opportunity to fully and fairly litigate the issue of his paternity in the 1992 divorce proceeding. At that time, by all factual accounts, John had no inkling that Megan was not his child. Merigayle, according to her affidavit, had discussed this with Willis but not with John. Thus, John had no reason to contest the presumption that Megan was his.

■ Secondly, the fourth element of collateral estoppel, that of "actual litigation," is not met in this case. Unlike *res judicata*, which acts to bar issues that merely could have been litigated in the first action, collateral estoppel requires actual litigation in the first instance. *Huffman v. Alderson*, 335 Ark. 411, 983 S.W.2d 899 (1999);

*Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 864 S.W.2d 244 (1993). *See also Swadley v. Krugler*, 67 Ark. App. 297, 999 S.W.2d 209 (1999). Further, this court cursorily applied this element in *Miller County v. Opportunities, Inc.*, 334 Ark. 88, 971 S.W.2d 781 (1998), and held that no issue was "actually litigated" before the court when on appeal, we could not determine that the lower court's order was based on any actual proceedings.

To discern what "actually litigated" means, we turn to *Black's Law Dictionary*. That dictionary defines "litigation" as "The process of carrying on a lawsuit; a lawsuit itself." *Black's Law Dictionary* 944 (7th ed. 1999). We emphasize the necessity for trying the issue sought to be estopped by stating that the matter must be *actually* litigated. In the 1992 divorce proceeding, neither John nor Merigayle put Megan's paternity in issue; hence no adversary presentations of evidence on this point were made. The chancery court's finding of paternity in the 1992 decree was not the result of litigation. At that time, only Merigayle had doubts that Megan was John's child, and she had not imparted those doubts to John.

We hold that the failure of John and Merigayle to actually litigate the issue of his paternity in the 1992 divorce proceedings prevents Willis's application of collateral estoppel to the later paternity action.

Finally, there is Willis's argument that OCSE is foreclosed from modifying the determination of paternity in the 1992 decree because the modification did not occur within three years of the decree as required by Ark. Code Ann. § 9-10-115(f) (Repl. 1998). We give this argument little credence because we do not view what occurred in the 1992 divorce as either an adjudication of paternity or voluntary acknowledgment of paternity as required under the Paternity Code. *See* Ark. Code Ann. §§ 9-10-101 through 202 (Repl. 1998). *See also Office of Child Support Enforcement v. Williams, supra* (provisions of the Paternity Code do not apply to paternity determinations arising as a matter of presumption under a divorce decree). It stands to reason that without a prior adjudication of paternity or an acknowledgment of the same, there can be no modification of paternity. What occurred in 1998 with the paternity complaint by OCSE, accordingly, was not an action to modify but an original action to establish paternity. *See Bean v. Office of Child Support Enforcement*, 340 Ark. 286, 9 S.W.3d 520 (2000).

■ Because we conclude that no adjudication of who Megan's biological father is has transpired, we hold that § 9-10-115(f) is inapposite to the instant case.[3] All that has occurred is that John was eliminated as the biological father by the 1998 decree. Megan, as a result, is without a father, and no support is currently being paid. Because we hold that a modification of paternity has not occurred in this matter, we need not address Willlis's argument that OCSE's action is time-barred.

Reversed and remanded.

THORNTON and HANNAH, JJ. concur.

JIM HANNAH, Justice, concurring. While I am compelled to concur in the result in this case, it must be noted that this case turns on a unique set of facts, and reliance on this opinion should take those facts into account. We have before us a couple who married and divorced twice. In this case, we are also faced with a chancellor in the second divorce of the parties who, despite a prior divorce decree setting out that Megan was born of the marriage, allowed DNA testing to disprove that prior finding and then declared John Triplett was not the father of Megan. There was no appeal from this divorce decree and, therefore, this issue was not brought to this court. Thus, when faced with its statutory obligation of locating the proper party to secure repayment of benefits, the Office of Child Support Enforcement was faced with a court order that declared that the presumed and previously declared father was not the father. Therefore, OCSE found no paternity had been established as to Megan and filed an action under Ark. Code Ann. § 9-10-104(4) (Repl. 1998) to establish paternity after the chancery court bastardized Megan.

It is not my view that this decision opens the door to dispute paternity in the typical divorce decree setting out that children born of the marriage are the children of the husband and wife. *See Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999). I am concerned that the analysis of the majority under res judicata and collateral estoppel may create the impression that divorce decrees are not the binding court orders they have been previously found to be.

---

[3] The modification section of the Paternity Code has been amended three times in the past six years to establish differing time periods in which paternity determinations can be modified. *See* Act 1091 of 1995 (five years); Act 1296 of 1997 (three years); Act 1736 of 2001 (no time limit).

It is important as well to keep in mind that absent the chancery decree bastardizing Megan, there would have been no need to establish paternity. Paternity had been set out in the 1992 decree. Therefore, in such a case, any action by OCSE would be by way of assignment of rights by Merigayle to OCSE. OCSE would not be allowed to challenge Megan's paternity because OCSE would stand in Merigayle's shoes as the contractual assignee of her entitlement to support. *Office of Child Sup. Enforcem't v. Ragland*, 330 Ark. 280, 954 S.W.2d 218 (1997). By the 1992 decree of divorce, Merigayle acknowledged Megan was born of the marriage. Further, by an affidavit dated June 17, 1993, Merigayle swore under oath that Megan was born of the marriage. Nothing in the statutes creating the paternity action purports to do away with the presumption of legitimacy of a child born during marriage. *Hall v. Freeman*, 327 Ark. 148, 936 S.W.2d 761 (1997). Further, nothing has altered the bar to parties to a divorce decree challenging the finding of paternity stated therein. *Williams, supra*. It should also be noted that there is not only the above noted false affidavit, but yet another affidavit stating the truth. There is an affidavit dated May 15, 1998, wherein Merigayle declares Willis is the father of Megan. Merigayle has lied in an affidavit in 1993. It is difficult to imagine this court would countenance Merigayle going into court after affirming under oath that Megan was the child of John Triplett to assert she was not. This would be so simply on grounds of public policy. The integrity of the court would be impugned thereby. *Grable v. Grable*, 307 Ark. 410, 821 S.W.2d 21 (1991). Because Merigayle could not do so, OCSE under Merigayle's assignment of rights could not do so. As this court stated in *Guaranty Nat'l Ins. v. Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993), (citing *Pacific Nat'l Bank v. Hernreich*, 240 Ark. 114, 398 S.W.2d 221 (1966)). "It is well settled that 'assignees can receive no better right than their assignors had.' "

Thus, while I must concur in the outcome on this unique set of facts, I must express my concern that this decision not be read too broadly.

THORNTON, J., joins in this concurrence.