Hugh BROWN *v.* Richard A. WYATT
and Arkansas Women's Center

CA 04-487                                          202 S.W.3d 555

Court of Appeals of Arkansas
Opinion delivered February 9, 2005

*Killough Law Firm*, by: *Larry Killough, Jr.*, for appellant.

*Friday, Eldredge & Clark, LLP*, by: *J. Phillip Malcom, Joseph P. McKay*, and *H. Wayne Young, Jr.*

WENDELL L. GRIFFEN, Judge. Hugh Brown appeals from summary judgment entered in Pulaski County Circuit Court in favor of appellees Dr. Richard Wyatt and the Arkansas Women's Center. He argues that the trial court erroneously granted appellees' motion for summary judgment and dismissed his tort action for negligence and outrage because Ark. Code Ann. § 9-10-202 (Repl. 2002) creates a statutory duty upon doctors to obtain the written consent of the husband before using artificial insemination to impregnate his wife. Appellant also argues that the doctrine of collateral estoppel does not bar him from pursuing actions for negligence and outrage against appellees for artificially inseminating his now ex-wife, Kathy Brown, knowing that appellant was not in favor of the procedure. We hold that collateral estoppel did not preclude appellant from litigating this case. However, we hold that appellant's suit is, in effect, for wrongful birth, which is not actionable in the State of Arkansas. Thus, we affirm.

Appellant and Kathy Brown were married in 1991. Appellant had a vasectomy prior to the marriage; however, the vasectomy was reversed to relieve his epidymitis. Tests in February 2000 revealed that his sperm were dead. At that time, appellant had no intention of getting his wife pregnant even though they had discussed having children in the past. Ms. Brown contacted California Cryobank and wanted to discuss the possibility of artificial insemination. She did not tell appellant that she was actually inseminated until after the fact, and he learned that she was pregnant in early April 2000. Appellant was displeased because he considered artificial insemination a violation of his Christian principles and because he did not like the thought of Ms. Brown being pregnant by another man. Ms. Brown gave birth to healthy twin girls in October 2000. Appellant was aware that the girls were given his last name and that he was listed as the father on the birth certificates. Appellant also accompanied Ms. Brown to the doctor twice, was concerned about the health of the girls, and supported Ms. Brown.

Ms. Brown filed for divorce on November 4, 2002. In the divorce suit, appellant contested the paternity of the children. Ms. Brown testified that appellant was willing to raise the girls while the marriage was happy, but that once she decided to divorce him, he wanted nothing to do with the girls and did not want to be financially responsible for them. Ms. Brown also testified in the divorce proceedings that she assumed appellant consented to the artificial-insemination procedure because he signed the papers, he never told her not to undergo the procedure, he never asked her to have an abortion after she became pregnant, and he supported the girls and held them out as his own. In its December 19, 2002 divorce decree, the trial court stated that the agreement that appellant and Ms. Brown signed with California Cryobank did not constitute written consent required by Ark. Code Ann. § 9-10-201(a) (Repl. 2002).[1] However, the trial court found appellant was estopped from denying that the children were his and ordered him to pay $157 per week in child support. We affirmed the decision. See Brown v. Brown, 83 Ark. App. 217, 125 S.W.3d 840 (2003).

On February 4, 2003, appellant filed the present action against appellees for the torts of negligence and outrage based on the artificial insemination of his ex-wife without his written consent. Appellees admitted the factual allegations in the complaint but denied liability. On June 20, 2003, appellees filed for summary judgment, and in an August 4, 2003 order, the trial court granted their motion to the extent that appellant's complaint alleged an action for medical injury due to the elapsed statute of limitations and denied summary judgment on all other grounds. On September 30, 2003, appellees again filed for summary judgment, arguing that appellant was collaterally estopped from arguing that he did not consent to the procedure, that appellees had no duty to appellant, and that there was no proof appellees' conduct was extreme or outrageous. The court granted the motion for summary judgment, stating that appellant was collaterally estopped from relitigating the fact that he knew the artificial insemination procedure was going to be performed and that he acted as if he

---

[1] Ark. Code Ann. § 9-10-201(a) states:

Any child born to a married woman by means of artificial insemination shall be deemed the legitimate natural child of the woman and the woman's husband if the husband consents in writing to the artificial insemination.

agreed to the procedure, and that by applying those facts to this case, appellant was barred from prosecuting his negligence and outrage claims.

■■ The standard of review for appeals from a grant of summary judgment is well-established:

> [S]ummary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts.

*Hisaw v. State Farm Mut. Auto Ins. Co.*, 353 Ark. 668, 676, 122 S.W.3d 1, 4 (2003) (quoting *Fields v. Southern Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 80, 87 S.W.3d 224, 226 (2002)).

■■ The doctrine of collateral estoppel (or issue preclusion) "precludes further litigation in connection with a certain issue and is limited to those matters previously at issue, which were directly and necessarily adjudicated." *Brinker v. Forrest City Sch. Dist. No. 7*, 344 Ark. 171, 175, 40 S.W.3d 265, 268 (2001). Collateral estoppel requires four elements before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the issue must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment. *State Office of Child Support Enforcement v. Willis*, 347 Ark. 6, 59 S.W.3d 438 (2001). Collateral estoppel may be used by someone who was a stranger to the prior suit; however, "the party against whom it is asserted must have been a party to the earlier action and must have

had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* at 15, 59 S.W.3d at 444 (citing 47 AM. JUR. 2d *Judgments* §§ 645, 650). Collateral estoppel precludes relitigation of facts as well as issues of law. *See Van Curen v. Arkansas Professional Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002).

In granting the motion for summary judgment, the trial court relied on the doctrine of collateral estoppel and our disposition of *Brown v. Brown*. However, the issue in the divorce suit was not whether appellant consented to the artificial insemination procedure. Rather, the parties to the divorce litigated the issue of paternity, and final disposition of the case was made without analysis of the artificial insemination consent statute. *See Brown*, 83 Ark. App. at 221, 125 S.W.3d at 843 ("despite the fact that the husband's consent was not in writing . . . , he is estopped as a matter of law to deny that these children are his because of his conduct.").[2] Whether appellees obtained appellant's written consent was not essential to the disposition in *Brown v. Brown*, nor was the issue of the written consent fully litigated. Consequently, the divorce proceeding did not preclude appellant from litigating the consent issue raised in the present case. To the extent that summary judgment was granted on this ground, the trial court was in error.

Next, we address whether summary judgment was properly granted on appellant's outrage claim. Our supreme court has described Arkansas's approach to the tort:

> To establish an outrage claim, a plaintiff must demonstrate the following elements: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and

---

[2] The court recounted the facts estopping appellant from denying paternity:

(1) that appellant knew appellee was going to get the sperm; (2) that appellant never said he would not consent to the procedure being performed and he signed the documents that were placed in front of him; (3) that appellant helped pick out the donor for the sperm; (4) that he allowed his name to be used on the birth certificate; (5) that after the children were born, he recognized them as his children; (6) that it was only after appellee began to talk about divorce that he decided he should not be responsible for the children.

*Brown*, 83 Ark. App. at 222, 125 S.W.3d at 843.

outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Angle v. Alexander*, 328 Ark. 714, 945 S.W.3d 933 (1997). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). This court gives a narrow view to the tort of outrage, and requires clear-cut proof to establish the elements in outrage cases. *Croom v. Younts*, 323 Ark. 288, 914 S.W.2d 306 (1996). Clear-cut proof, however, does not mean proof greater than a preponderance of the evidence. *Croom*, 323 Ark. 95, 913 S.W.2d 283.

*McQuay v. Guntharp*, 331 Ark. 466, 470-71, 963 S.W.2d 583, 585 (1998). With the possible exception of causation (which we do not decide), appellant's claim fails on every element. While appellees failed to comply with § 9-10-202, they did not know, or should have known, that emotional distress was likely to result. Second, appellees' conduct was not extreme and outrageous. In his brief, appellant argues, "The actions of the doctor here were in direct contravention of Mr. Brown's wishes, resulted in the birth of children he did not want, contributed to his divorce and has saddled Mr. Brown with child support payments for eighteen years so that every month for those eighteen years he will be re-reminded of the callous and willful acts of the doctor." These "damages" are not recoverable. Appellees' actions may have produced children appellant did not want, but he cannot recover the cost of raising those children from appellees. In *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982), a father sought damages for raising a child after a doctor performed an unsuccessful vasectomy, resulting in the birth of a healthy baby girl. Our supreme court gave a detailed discussion of actions for "wrongful birth" and determined that a claim for expenses in rearing a child, even as a result of an unwanted pregnancy, must be denied as against public policy.[3] Even if a wrongful-birth suit were cognizable under Arkansas law, appellant is paying child support not because appellees inseminated his

---

[3] The supreme court did say, however, that a doctor in such a case would be liable for damages connected with the operation and connected with the pregnancy.

ex-wife, but because he accepted the children as his own and was estopped from denying paternity. Accordingly, we affirm the grant of summary judgment in favor of appellees on appellant's outrage claim.[4]

■ Finally, we must determine if appellant has a cause of action against appellees for negligence. Appellant argues that Ark. Code Ann. § 9-10-202(b) provides a statutory duty owed by doctors in favor of husbands.[5] However, there is no need to determine whether the statute creates such a duty. Appellant is asking the appellees to reimburse him the cost of raising two children. As damages for "wrongful birth," they are not recoverable under Arkansas law. Because appellant cannot recover damages, appellees were entitled to summary judgment in their favor.[6]

Affirmed.

VAUGHT, J., agrees.

CRABTREE, J., concurs.

TERRY CRABTREE, Judge, concurring. The appellant, Hugh Brown, brings this appeal from an order granting summary judgment in favor of appellees on the ground that his complaint was barred by collateral estoppel. I am in agreement with the two judges on my panel that the dismissal of appellant's complaint must be affirmed. It is my conclusion, however, that the trial court did not err in ruling that appellant's claims were precluded on the basis of collateral estoppel.

The facts relevant to this appeal are as follows. In October 2000, appellant's wife gave birth to twin daughters after being artificially inseminated with donated sperm obtained from Cali-

---

[4] Appellant also blames appellees for causing a strain on his marriage; however, with divorce rates as high as they are in Arkansas (approximately 17,100 divorces in 2001 according to U.S. Census Bureau, *Statistical Abstract of the United States: 2002*), we would be opening the floodgates if we allowed lawsuits for any third party who indirectly caused the breakup of a marriage.

[5] The statute reads as follows:

Prior to conducting the artificial insemination, the supervising physician shall obtain from the woman and her husband or the donor of the semen a written statement attesting to the agreement to the artificial insemination, and the physician shall certify their signatures and the date of the insemination.

[6] We are affirming the judgment even though the trial court reached the proper result using the wrong reasoning. *Hudson v. Hilo,* 88 Ark. App. 317, 198 S.W.3d 569 (2004).

fornia Cryobank, Inc. The insemination procedure was performed by appellee Dr. Richard A. Wyatt, who was employed by appellee Arkansas Women's Center, P.A. Appellant's wife subsequently filed for divorce. In the divorce proceeding, appellant contended that he should not be considered the father of the twins because he had not consented in writing to the artificial insemination procedure. Appellant's argument was based on Arkansas Code Annotated section 9-10-201(a) (Repl. 2002), which provides that "[a]ny child born to a married woman by means of artificial insemination shall be deemed the legitimate natural child of the woman and the woman's husband *if the husband consents in writing to the artificial insemination.*" (emphasis supplied). The trial court in that action rejected appellant's contention finding that, because of his actions, he was estopped from denying paternity of the children based on the absence of written consent. Accordingly, the trial court determined that appellant was the father of the children and ordered him to pay $157 per week in child support. Appellant appealed the trial court's decision.

While the appeal was pending, appellant filed the present action against appellees, Dr. Wyatt and the Arkansas Women's Center. In his complaint, appellant asserted causes of action based on negligence and the tort of outrage seeking unspecified damages for emotional distress, pecuniary damages flowing from his child-support obligation to the children, and punitive damages. Appellant's complaint was founded on the lack of written consent to the insemination procedure based on Arkansas Code Annotated section 9-10-202(b) (Repl. 2002), which provides that "[p]rior to conducting the artificial insemination, the supervising physician shall obtain from the woman and her husband or the donor of the semen *a written statement attesting to the agreement to the artificial insemination,* and the physician shall certify their signatures and the date of the insemination." (emphasis supplied). As factual support for his claims, appellant maintained that he did not know that the procedure was going to be performed and that it was performed against his expressed wishes.

After answering the complaint, appellees moved for summary judgment, arguing: (1) that appellant's claims for medical malpractice were barred by the two-year statute of limitations; (2) that appellant had failed to state facts upon which relief could be granted because there is no cause of action for wrongful birth; (3) that appellant had failed to state facts upon which relief could be granted because the statute does not give rise to a duty; and (4) that

appellant's complaint was barred by collateral estoppel based on the findings in the divorce suit. The trial court granted partial summary judgment in favor of appellees to the extent that the complaint alleged a cause of action for medical injury as being barred by the applicable statute of limitations. The court denied appellees' motion for summary judgment on the remaining grounds without prejudice.

On October 22, 2003, we affirmed the divorce court's ruling that appellant was estopped from denying that he was the father of the children. *Brown v. Brown*, 83 Ark. App. 217, 125 S.W.3d 840 (2003). After our decision, the trial court in this case revisited appellees' motion for summary judgment. After a hearing, the trial court ruled that collateral estoppel barred appellant's complaint. Because it was dismissing appellant's complaint with prejudice on that ground, the court declined to rule on the other issues raised in the summary-judgment motion. This appeal followed.

The concept of *res judicata* has two facets: issue preclusion and claim preclusion. *Barclay v. Waters*, 357 Ark. 386, 182 S.W.3d 91 (2004). Issue preclusion is also known as collateral estoppel. *Cox v. Keahey*, 84 Ark. App. 121, 133 S.W.3d 430 (2003). The doctrine of collateral estoppel bars the relitigation of issues of law or fact actually litigated by the parties in the first suit, provided that the party had a full and fair opportunity to litigate the issue in question and the issue was essential to the judgment. *Beaver v. John Q. Hammons Hotels, Inc.*, 355 Ark. 359, 138 S.W.3d 664 (2003). For collateral estoppel to apply, the following elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Cox v. Keahey, supra.* Unlike *res judicata*, collateral estoppel does not require mutuality of parties before the doctrine is applicable. *Riverdale Development Co. v. Ruffin Systems, Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004).

In the former action, the divorce suit of *Brown v. Brown, supra*, the clear issue was whether appellant could take advantage of the lack of written consent, and it was determined that estoppel prevented appellant from so doing. This conclusion was based on the determination that appellant's conduct indicated both that he knew about the insemination and that he consented to the procedure. This determination was based on the following findings of

fact: that appellant signed a document entitled "A Frozen Donor Semen Specimen Agreement," authorizing his credit card to be charged to pay for the semen specimen; that appellant helped choose the donor of the semen; that appellant knew that the procedure was to be performed and that his wife telephoned him afterwards to advise how it had gone; that appellant never said that he would not consent to the procedure and he signed the documents that were placed in front of him; that appellant helped pick out the children's names; that appellant consented to being named the children's father on their birth certificates; that he recognized them as his children after they were born; and that it was only after appellee began to discuss divorce that appellant decided to disclaim responsibility. *See id.*

In the present case, appellant again seeks to exploit the lack of written consent. He seeks to impose liability based on the lack of written consent, predicated on allegations that he had no advance knowledge of the insemination procedure and that the procedure was performed against his wishes. However, in the former action it was determined that appellant could not claim any benefit from the lack of written consent because his actions demonstrated that he did know about the procedure and that he gave his consent. It is abundantly clear that the same issues of law and fact that serve as the basis for appellant's complaint in this action were fully litigated in the first suit and were essential to the final judgment that was rendered against him.

Contrary to the assertions in the prevailing opinion, the absence of written consent was the central and overriding issue in the divorce proceeding. Indeed, it was the sole basis on which appellant sought to deny paternity. Yet, it was determined as a matter of fact that appellant's actions prevented him from taking advantage of the lack of written consent. In my view, the trial court in the present action was completely justified in finding that collateral estoppel bars this suit.