# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3462
_____

James Andrew Tanner

*Plaintiff - Appellant*

v.

Kurt Ziegenhorn, in his individual capacity; Bill Bryant, Colonel, in his official capacity as head of the Arkansas State Police, an agency of the State of Arkansas; William Sadler, "Bill", in his individual capacity

*Defendants - Appellees*

John Doe, 1-5, individually and in their official capacity; Mike Kennedy, Individually; Elizabeth Chapman, Individually

*Defendant*s
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: September 20, 2022
Filed: January 20, 2023
[Unpublished]
_____

Before COLLOTON, WOLLMAN, and STRAS, Circuit Judges.
_____

PER CURIAM.

Openly carrying a holstered firearm at a Walmart landed James Andrew Tanner in trouble with the law. He now sues the Arkansas trooper who stopped him. The district court[1] dismissed the case, and we affirm.

I.

Tanner ran into off-duty Arkansas State Trooper Kurt Ziegenhorn while openly carrying a firearm in a thigh holster. Even though Walmart had no policy against it, only law-enforcement officials could openly carry a firearm in Arkansas at the time. *See* Ark. Op. Att'y Gen. No. 2013-047. When it became clear that Tanner was not with any law-enforcement agency, Ziegenhorn asked for identification. Tanner refused and allegedly moved his right hand toward his holster. Ziegenhorn blocked the move by grabbing Tanner's arm. Eventually, Tanner left the store, only to have local police waiting for him outside.

It was not long before the dispute between Tanner and Trooper Ziegenhorn moved from Walmart to state court. First, Ziegenhorn filed a complaint with the Arkansas State Police to have Tanner's concealed-carry permit revoked. *See* Ark. Code Ann. § 5-73-302(a). After losing his permit, Tanner appealed to state court, which upheld the agency's decision. *See* Ark. Code Ann. § 25-15-212(a) (creating a right to judicial review of "final agency action"). In the process, it rejected the argument that briefly detaining him at Walmart had violated his Fourth Amendment rights.

Second, the encounter led to criminal charges. The state charged Tanner with obstructing governmental operations based on his refusal to provide identification. *See* Ark. Code Ann. § 5-54-102(a)(1). Trooper Ziegenhorn, who was a witness at the trial, testified that Tanner moved his right hand toward his gun during the encounter. A state court eventually acquitted him.

---

[1]The Honorable D. P. Marshall, Jr., Chief Judge, United States District Court for the Eastern District of Arkansas.

Now Tanner is the one pursuing Trooper Ziegenhorn. He claims, as relevant here, that detaining him violated his Fourth Amendment rights, *see* 42 U.S.C. § 1983, and that Ziegenhorn committed perjury when he testified that Tanner moved his right hand toward his gun, *see* Ark. Code Ann. § 5-53-102 (perjury); Ark. Code Ann. § 16-118-107 (creating a private right of action).

The district court dismissed both claims, one on the pleadings and the other at summary judgment. Collateral estoppel prevented him from relitigating the Fourth Amendment issue. And the perjury claim could not get past summary judgment because Trooper Ziegenhorn never made a "false material statement." Ark. Code Ann. § 5-53-102(a)(1).

## II.

Tanner challenges both decisions. Our review of each is de novo. *See Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020) (summary judgment); *Turner v. U.S. Dep't of Just.*, 815 F.3d 1108, 1111 (8th Cir. 2016) (motion to dismiss).

## A.

In Arkansas, as elsewhere, the doctrine of collateral estoppel prevents parties from trying to litigate the same issue twice. *See State Off. of Child Support Enf't v. Willis*, 59 S.W.3d 438, 444 (Ark. 2001). For a determination to be "conclusive in a subsequent proceeding," it must meet four requirements. *Id.* (listing them). Only two of them, however, are in dispute here: whether the Fourth Amendment issue is the same in both cases and whether the state court's "determination" of it was "essential to the judgment." *Id.*

First, Tanner is suing on the same Fourth Amendment issue he raised in the earlier proceeding. *See id.* Tanner asked for the return of his concealed-carry permit

for several reasons, one of which was that Trooper Ziegenhorn had unconstitutionally seized him at Walmart. *See United States v. Arvizu*, 534 U.S. 266, 273 (2002) (discussing the reasonable-suspicion requirement for investigatory stops). The court ultimately disagreed and left no doubt about its conclusion: "Ziegenhorn clearly had reasonable suspicion to stop and detain Tanner." The issue is the same here, even if Tanner is now seeking a different remedy. *See Palmer v. Ark. Council on Econ. Educ.*, 40 S.W.3d 784, 789–90 (Ark. 2001).

Second, deciding the Fourth Amendment issue was "essential to the judgment." *See Willis*, 59 S.W.3d at 444. Under Arkansas's Administrative Procedure Act, a court "may reverse or modify the [agency's] decision" if it was "in violation of constitutional or statutory provisions." Ark. Code Ann. § 25-15-212(h). It decided not to do so, which made rejecting the Fourth Amendment argument essential to its judgment upholding the permit revocation. *See Beaver v. John Q Hammons Hotels, L.P.*, 138 S.W.3d 664, 667 (Ark. 2003) (explaining that two issues were "essential" to affirming an administrative decision because "without either, . . . the judgment would not have been able to stand"). Collateral estoppel prevents him from getting a second bite at the apple in federal court.[2]

B.

Nor can he get past summary judgment on his perjury claim. It may seem unusual for there to be a private right of action for perjury, which is a criminal offense. But under Arkansas law, a crime victim can sue for someone else's felony conduct. *See* Ark. Code Ann. § 16-118-107; *see also Hamby v. Health Mgmt.*

---

[2]Tanner's other argument, which is that the state court deferred to the agency, fares no better. Although it is true that Arkansas courts review administrative decisions for substantial evidence under an arbitrary-and-capricious standard, *Wright v. Ark. State Plant Bd.*, 842 S.W.2d 42, 45 (Ark. 1992), the record shows that the Fourth Amendment issue received de novo review, *cf. Ark. Ethics Comm'n v. Weaver*, 617 S.W.3d 680, 683 (Ark. 2021) ("We afford no deference to an agency's statutory interpretation; our review is de novo.").

*Assoc., Inc.*, 462 S.W.3d 346, 351 (Ark. Ct. App. 2015) (explaining how the statutory cause of action works).

In this case, the perjury allegation arises out of Trooper Ziegenhorn's testimony that Tanner moved his right hand toward his holstered gun during their encounter at Walmart. According to the complaint, the surveillance footage conclusively rebuts his testimony and shows that he knowingly made a "false material statement" in an "official proceeding." Ark. Code Ann. § 5-53-102(a)(1).

The main problem for Tanner is a lack of materiality.[3] Only those statements that "affect[] or could affect the course or outcome of an official proceeding" can support a perjury prosecution. Ark. Code Ann. § 5-53-101(1)(A). And here, "[t]he issue" was, as the state court put it, whether Arkansas's concealed-carry rules created an "obligation on the part of a citizen to provide identification when requested." *See* Ark. Code Ann. § 5-54-102(a)(1). Whether Tanner reached for his gun, by contrast, had nothing to do with *that* issue. To put the point in legal terms, the false statement could not have "affect[ed] the course or outcome" of the trial. Ark. Code Ann. § 5-53-101(1)(A).

## III.

We accordingly affirm the judgment of the district court.

———————————————————

[3]Like the district court, we have our doubts about whether Tanner can prove that Trooper Ziegenhorn *knowingly* made a false statement. After all, he relied on his own memos and notes from the case file in preparing his testimony, not the Walmart surveillance video.